PEOPLE *v.* DURHAM.

1. CRIMINAL LAW—INFORMATION—DUPLICITY—ASSAULT.
   An information charging an assault upon two persons, by shooting and wounding them, is not bad for duplicity, and may be sustained by proof of assault upon one of them.

2. SAME—SELF-DEFENSE—PRIOR QUARRELS.
   No question of self-defense being involved in a prosecution for assault with intent to do great bodily harm, affirmative testimony tending to show threats or offensive conduct of the assailed person on occasions prior to the one in question were inadmissible on behalf of the defense.

3. SAME.
   However, testimony as to the previous relations of the parties was properly elicited, on cross-examination of the complaining witness, whose fairness and credibility was a proper subject of inquiry; it was error to instruct the jury not to consider it.

4. SAME — ASSAULT WITH INTENT TO DO GREAT BODILY HARM — LESSER OFFENSES.
   The court erred in refusing respondent's request to instruct the jury that the offense included the lesser degrees of assault, of which the jury might find respondent guilty, *i. e.*, assault and battery and simple assault.

5. SAME—INTENT—CONDUCT OF COURT.
   The question of respondent's felonious intent being for the jury,

it was error to submit to the jury respondent's claim that his mind was so confused by the controversy with complaining witness and weakened by a previous sunstroke and by ill health that he was unable at the time to form a criminal intent, in the following language: "I believe he claims on this particular occasion he was suffering from that malady and that condition and was not conscious of what he did. It is for you to say and that is an important thing for you to determine in this case. There is not much but this condition and intention in dispute. It is for you to say whether or not a man who is laboring so under a diseased condition of mind and body, or both, that he would not be intelligently conscious of what he did and its probable results, and whether a man in that frame of mind would say to his wife who had the gun, 'Don't shoot,' or 'Don't fire,' and then go to her and take the gun and fire. It is for you to say whether a man who was in the exercise of his natural functions would say to those men who were driving away from him, 'Halt! halt!' and then, when they did not halt, immediately fire upon them. It is for you to say whether the gun went off unconsciously the first time, and, if so, whether it went off unconsciously the second time. It is for you to say, if it went off unconsciously, whether it unconsciously hit the mark both times," etc.

6. SAME—CONDUCT OF COURT.
    The trial judge is precluded from intimating to the jury his views as to the merits of the case.

Exceptions before sentence from Mason; Withey, J. Submitted April 18, 1912. ( Docket No. 127.) Decided May 31, 1912.

Harvey Durham was convicted of assault with intent to do great bodily harm. Reversed.

*Henry Reek*, Prosecuting Attorney, for the people.

*Frank E. Wetmore*, for respondent.

STEERE, J. The actions of certain predatory pigs and a double-barreled shotgun marked the beginning and end of the events out of which this prosecution developed.

Respondent was convicted in the circuit court of Mason

county of having, on the 26th of April, 1911, committed an assault upon Carl Jensen with intent to do him great bodily harm, less than the crime of murder. The information under which respondent was convicted charged him with having committed the assault on said Carl Jensen and Herbert Sweeris, jointly, with intent to do them great bodily harm. The essential facts as to the assault itself are practically undisputed.

It is uncontradicted that Carl Jensen, the complaining witness, and respondent owned farms less than a mile apart. Jensen's farm was rented to a tenant, named Herbert Sweeris. On April 26, 1911, Jensen took Sweeris in his buggy to the farm of respondent, for the purpose of interviewing the latter in regard to certain pigs belonging to Sweeris which respondent had, a short time previously, impounded or distrained, because they were trespassing upon and damaging his property. Upon reaching respondent's residence, Jensen inquired for him, and learned that he was at a distance of some 80 or 100 rods back in a field; and, the gate being open, they drove back to where he was. The purpose of their visit was made known to him, and was the subject of their conversation until they parted. The testimony as to what was said is conflicting, and there is some dispute as to what was done. Jensen and Sweeris testified that Jensen, after broaching the subject, inquired of respondent the amount of his claim for damages, offering, if not too much, to pay the same and take the pigs away; that respondent refused to name any amount, though several times asked to do so, but claimed they had destroyed the nests of two setting hens, a couple of pails of stock food, and "were chewing up wheat," etc.; that, being unable to get any definite answer from defendant, or to accomplish anything in the line of a settlement, Jensen started to turn his horse and buggy around, preparatory to leaving the premises by the way they came, when respondent still talking about the pigs, attempted to take hold of the lines at the horse's head, apparently to detain them; that, though admonished to keep

away, he persisted, and made repeated attempts to catch hold of the lines; and, to prevent him from doing so, Jensen struck him on the hand with his whip. It appears, undisputed, that in the meantime defendant's wife and daughter, approaching from the house, the former carrying a shotgun and the latter a rifle, met Jensen and Sweeris just as they were driving away, and joined defendant. Jensen and Sweeris testify that they were endeavoring to remove themselves out of the danger zone as rapidly as their horse could be induced to proceed, and had retreated some five rods from defendant when he seized the shotgun from his wife and twice commanded them to halt, which they did not do, and he immediately fired two shots in rapid succession, the first one striking Jensen with a large number of shot in the back of the head and neck, the second load scattering sufficiently to inflict a shot pattern upon both occupants of the buggy; that respondent followed this by firing twice toward the disappearing rig with a 22-caliber rifle, which the daughter had brought—they hearing the bullets whistle by, but neither taking effect. The doctor extracted some 20 or 25 shot from the back of Jensen's head, and counted from 64 to 68 in his shoulders and back.

Respondent's version of the affray is that, when Jensen and Sweeris reached the point of meeting, Jensen, after broaching the subject of the pigs, began to use quarrelsome and abusive language, asked him what damage he claimed, and accused him of stealing the pigs, calling him vile names, to which respondent replied, in explanation, stating what damage had been done to him and why he had distrained the offending animals. That he finally told them, as they were driving away, to hold on, that they could have the pigs, and approached the buggy for the purpose of riding with them to the house, when Jensen struck him over the head several times with his whip, threatening to kill him. The strokes staggered and dazed him, and just then, as they were driving away, he heard some one call out, "Don't shoot that horse," which par-

tially revived him, and he told his wife not to shoot, but took the gun from her and "halted" the men. That then—

"They had got quite a distance, 12 or 15 rods. I halted them, and Mr. Jensen said: 'Shoot, you [using epithet]. I can shoot too.' The gun was discharged, as I supposed, in the air, and at a distance I thought he was going upgrade; and it hit him in the back of the head."

That he had no intention of hitting the parties; had not spoken a cross word to them that morning; had no clear recollection of shooting whatever; did not remember of shooting the second time, and did not intend to do so, or to do them any bodily harm.

It is undisputed that Jensen and Sweeris visited respondent on a lawful mission, for the purpose of settling a matter in difference in regard to some pigs; that neither of them left the buggy while on defendant's place; that at the time the shots were fired they were rapidly driving away from where respondent was. All the witnesses so testify. Respondent's daughter testified that previous to the shooting Jensen started to run the horse; that the men were driving away from her father when he fired the shots, with their backs turned towards him. The wife testified that Mr. Jensen had turned the horse around, headed the other way, and was driving away.

On the trial, objection was made to the introduction of any testimony by the prosecution, on the ground that the information was bad for duplicity in charging assaults on two different persons and two separate offenses in one count. This objection was overruled. In his charge, the court instructed the jury that they could convict the respondent, if they should find he intended to do one or both of the parties named great bodily harm. This is alleged as error; it being urged that the information and charge of the court should present a single issue, so that when a verdict is rendered it can be known that the minds of all the jurors met on that issue. An information may properly charge a felonious assault on two per-

sons at the same time, and is supported by proof of assault on one only. *People* v. *Ellsworth*, 90 Mich. 442 (51 N. W. 531); *Commonwealth* v. *O'Brien*, 107 Mass. 208; 3 Cyc. p. 1037.

Error is assigned on refusal of the court to allow respondent, against objection of the prosecution, to introduce testimony as to previous trouble between respondent and Jensen, of acts and threats of Jensen, and the reason for respondent's wife and daughter carrying the guns to him. Under the undisputed facts, such testimony was immaterial and incompetent as affirmative proof in justification of the assault. No element of self-protection enters into this controversy. Whatever conditions might have existed at some other time, it is undisputed that when these shots were fired Jensen and Sweeris were in full retreat by the way they came, not even willing to halt on demand. Where no question of self-defense is involved, independent, affirmative evidence by the defense as to the acts and conduct of the party assaulted, prior to the commission of the offense, is inadmissible. *People* v. *Kelly*, 94 N. Y. 526; 3 Cyc. p. 1055.

There was no error in the court so instructing the jury after counsel for defendant had stated in their presence what he proposed to show in that particular, and for what purpose, and it was his duty to do so; but, in that connection, the court struck out, and instructed the jury to disregard, all testimony adduced on cross-examination of the complaining witness as to previous trouble between the parties and conduct indicating ill will towards respondent. This was error. On cross-examination of a witness, he may be interrogated as to the relations between himself and the accused, and any circumstances tending to show whether they were friendly or unfriendly, as bearing upon the degree of credit his evidence should receive. The particulars and causes of the hostile feeling, when shown, may be inquired into as bearing on the fairness and truthfulness of the witness (*State* v. *Dee*, 14 Minn. 35 [Gil. 27]); and the jury should be properly cautioned and in-

structed as to the only purpose for which such testimony can be considered by them.

Error is assigned on the refusal of the court to give defendant's request to charge that the information included lesser degrees of assault, and, if not satisfied that defendant was guilty of assault with intent to do great bodily harm, the jury could find him guilty of assault, or assault and battery. It was early held in *Hanna* v. *People*, 19 Mich. 316, that, where an assault of a higher degree was charged, including a battery, simple assault and battery are included; and defendant may be convicted of the included offense. This rule has been applied to the specific kind of offense charged in this case. *People* v. *Prague*, 72 Mich. 178 (40 N. W. 243).

In the case at bar, both assault and assault and battery are specifically charged; it being alleged in the information—

"That defendant, * * * with force and arms, in and upon Carl Jensen and Herbert Sweeris, * * * did make an assault, and the said Carl Jensen and Herbert Sweeris did then and there shoot, beat, wound, and illtreat by then and there," etc.

This is recognized as a rule of general application in cases of felonious assault. *People* v. *Courier*, 79 Mich. 366 (44 N. W. 571); *People* v. *Ellsworth, supra; People* v. *Webb*, 127 Mich. 29 (86 N. W. 406); *People* v. *Abbott*, 97 Mich. 484 (56 N. W. 862, 37 Am. St. Rep. 360). In the latter case, which was an information for rape, it was said:

"The court also erred in instructing the jury that they must convict respondent of rape, if at all. The information for rape necessarily embraced the offense of an assault with intent to commit the crime of rape, and an assault and battery; and the jury should have been instructed that they might convict him of either of the lesser offenses."

While it can well be argued that, if able to form a criminal intent, respondent, if guilty at all, was guilty of the offense as charged, nevertheless the question of intent was

a question of fact for the jury, which could not be decided by the court. In charging the jury in this case, the court said: "And his action in firing the gun as he did was wholly unlawful and criminal in its aspects. It remains for you to say in what degree it was criminal"— following which, the court instructed the jury that it could only be criminal in the highest degree charged, if at all. Under the authorities cited, this was error. The court should have instructed the jury along the lines requested.

It was claimed, in behalf of respondent, that he was not in mental condition to form at the time such a criminal intent as is required to hold him accountable for more than he actually did, if even to that extent; that, where assault is charged with a specific felonious intent, which raises the offense from a misdemeanor to a felony, such intent must be affirmatively proven, as a distinct, substantive fact, and must be found, by the jury, established, beyond a reasonable doubt, to the same degree of certainty that the physical act itself must be so proven and found; that respondent was not strong mentally, had suffered sunstroke some years before, and his mind had since been more or less affected and weak; that Jensen had struck him over the head with the butt of his whip, leaving a welt which he carried at the time of the trial; that the blows dazed him and paralyzed his mind, so that he was confused and bewildered, and had very little idea of what he did, or why he did it. The merits of this issue were entirely for the jury. The court in his charge recognized this, but submitted the question argumentatively, saying, among other things:

"I believe he claims that on this particular occasion he was suffering from that malady and that condition, and was not conscious of what he did. It is for you to say; and that is an important thing for you to determine in this case. There is not much but this condition and intention in dispute. It is for you to say whether or not a man who is laboring so under a diseased condition of mind and body, or both, that he would not be intelligently conscious of what he did, and its probable results, and

whether a man in that frame of mind would say to his wife, who had the gun, ' Don't shoot,' or ' Don't fire,' and then go to her and take the gun and fire. It is for you to say whether a man who was in the exercise of his natural functions would say to those men, who were driving away from him, ' Halt! Halt!' and then, when they did not halt, immediately fire upon them. It is for you to say whether the gun went off unconsciously the first time, and, if so, whether it went off unconsciously the second time. It is for you to say, if it went off unconsciously, whether it unconsciously hit the mark both times. * * * It is your duty to take into consideration any contrary statements that he has made, if any, out of court and other times. I refer particularly to what he said to the witness Pratt, or what he failed to say."

We have no criticism to offer to this as an argument of the facts; but it more properly belonged to the prosecuting attorney than to the court. This portion of the charge comes very close to being subject to the same objections pointed out in *People* v. *Clarke*, 105 Mich. 169 (62 N. W. 1117), and *People* v. *McCord*, 76 Mich. 200 (42 N. W. 1106). In the latter case, the court said:

"Having told the jury that respondent had admitted all that was necessary to convict him, if not so insane or intoxicated as to be able to form no intent, and having pointed out to them that his conduct did not indicate any lack of reasoning power, this charge was neither more nor less than an instruction to convict."

Under the system of jurisprudence which has so far obtained in this State, whether rightfully or wrongfully, the trial judge is precluded from intimating to the jury his views as to how they should decide the issues of fact within their province; and it would be an exceedingly dull jury that failed to grasp the drift of the charge in the particulars pointed out.

By reason of the errors mentioned, we are constrained to reverse the judgment, and order a new trial.

MOORE, C. J., and MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.