PEOPLE *v.* PHILLIPS

PEOPLE *v.* PALLONE

PEOPLE *v.* LEE

PEOPLE *v.* LENGYEL

PEOPLE *v.* FIELDS

OPINION OF THE COURT

1. TRIAL — EVIDENCE — PHOTOGRAPHS — PROBATIVE VALUE — PREJUDICIAL EFFECT — ADMISSIBILITY.

Photographic evidence of a potentially prejudicial nature is admissible only if its probative value outweighs its possible prejudicial effect, particularly if the circumstances of a defendant's arrest tend to connect him with the offense charged.

2. TRIAL — EVIDENCE — OBSCENITIES — PREVALENCE — NOT IPSO FACTO INFLAMMATORY.

Certain obscenities have become so prevalent in our contemporary society that the Court of Appeals does not consider them to be *ipso facto* inflammatory evidence when presented to a jury.

3. RAPE—EVIDENCE—PHOTOGRAPHS—OBSCENE WORDS—FAIR TRIAL.

Photographs taken of defendants after their arrest for rape showing them naked from the waist up, with obscenities painted on their bodies, were neither so prejudicial nor so inflammatory that a fair and impartial trial could not result.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 785, 787.
[2] 29 Am Jur 2d, Evidence § 260.
[3, 7] 29 Am Jur 2d, Evidence, §§ 785, 787, 790, 791.
[4] 53 Am Jur, Trial §§ 77, 458, 459.
[5] 53 Am Jur, Trial § 35.
[6] 29 Am Jur 2d, Evidence § 366.
[8–13] 29 Am Jur 2d, Evidence §§ 613, 614, 640.
[14] 29 Am Jur 2d, Evidence § 787.

4. Trial—Impromptu Remarks—Good Faith—Nonprejudicial—Applicable Test.

> Impromptu remarks made before a jury in the haste and heat of a trial should not be held prejudicial if they are made in good faith and if, when fairly construed, they do not appear to have influenced the jury adversely to the accused's rights for the test is not whether there were some irregularities but rather did the accused have a fair and impartial trial.

5. Trial—Criminal Justice—Fair Balance—Minimum Risk to Innocent—Miscarriage of Justice.

> Our system of criminal justice is based upon the idea of striking a fair balance and of providing a minimum risk that an innocent person will be convicted and where a trial judge succeeds in accomplishing this, even in the frustrating heat of a bitterly contested trial, the Court of Appeals will not reverse unless the trial record discloses a miscarriage of justice (MCLA § 769.26).

### Dissenting Opinion
### Bronson, J.

6. Criminal Law—Evidence—Like Acts—Motive—Intent—Statute—Admissibility.

> *Like acts or other acts of defendant in a criminal case tending to show motive or intent are admissible only if motive or intent is material in the crime charged (MCLA § 768.27).*

7. Rape—Intent Immaterial—Criminal Law—Evidence—Photographs—Obscene Words—Statute—Admissibility.

> *Intent is not material in a prosecution for rape, consequently, photographs of defendants, taken 10 to 12 hours after their arrest and showing obscene words painted on their nude bodies, which were introduced to show their intent to commit rape, were erroneously admitted under the statute allowing like acts or other acts of a defendant to be introduced if intent or motive is material to the crime charged (MCLA § 768.27).*

8. Criminal Law—Evidence—Facts Attendant upon Arrest—Logical Connection with Crime—Proper to Prove.

> *Facts and circumstances attendant upon an accused's arrest may always properly be proved where such facts and circumstances logically tend in any degree to connect the accused with the crime charged consequently, since the operative effect of this rule is to permit an inference from guilty conduct to the commission of a wrongful deed, its integrity depends upon the*

*degree of adherence to the requirement that the circumstance relied upon, whatever it may be, must tend to connect the accused with the specific offense for which he is being tried, and this same requirement of logical connection with the crime is applicable to evidence introduced under the statute permitting like acts or other acts of a criminal defendant to be admissible if such acts tend to show motive or intent material to the crime charged (MCLA § 768.27).*

9.  CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST—WORDS—CONDUCT—CONSCIOUSNESS OF GUILT—ADMISSIBILITY.

*Evidence rule which allows facts and circumstances of a defendant's arrest to be proved when they tend to connect defendant with the crime charged is properly invoked only where the evidence sought to be introduced relates to a defendant's words or conduct at the time of arrest which manifest his consciousness of guilt (MCLA § 768.27).*

10.  CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST—EXEMPLIFICATION OF GUILTY CONDUCT.

*Offers of bribes, attempts to flee, threats, lies, inconsistent or contradictory statements or the giving of false information or identification exemplify an accused's guilty conduct at the time of his arrest under the evidence rule permitting evidence to be introduced showing an accused's words or conduct which manifest a consciousness of guilt.*

11.  CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST—SILENCE, INACTION—NO INFERENCE OF GUILT.

*No inference of guilt could reasonably be drawn from the facts and circumstances attendant at defendants' arrest for rape when they neither said nor did anything at that time which manifested a consciousness of guilt and the prosecution relied solely upon their appearance, i.e., photographs of defendants showing that obscene words were painted on their nude bodies, to support an inference of their guilt.*

12.  CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST—INFERENCE OF GUILT—ADMISSIBILITY—WEIGHT—EXPLANATION OF CONDUCT.

*If an inference of guilt may reasonably be drawn from the circumstances of an accused's arrest, then such evidence is admissible but the weight of that evidence is for the jury to determine, and a defendant is entitled to offer evidence to explain his suspicious conduct.*

13. CRIMINAL LAW—EVIDENCE—CIRCUMSTANCES OF ARREST—SILENCE,
INACTION—NO INFERENCE OF GUILT—INADMISSIBILITY OF PHOTO-
GRAPHS.

> *When no inference of guilt may reasonably be drawn from the
> circumstances attendant upon an accused's arrest when he
> neither says nor does anything at that time which manifests
> a consciousness of guilt, photographic evidence of the accused's
> appearance at that time, or thereafter, is inadmissible.*

14. CRIMINAL LAW—EVIDENCE—PHOTOGRAPHS—PROBATIVE VALUE—
PREJUDICIAL EFFECT—ADMISSIBILITY.

> *Photographs having obvious probative value are inadmissible if
> such probative value is outweighed by their prejudicial effect,
> such as the inflammatory nature of their content.*

Appeal from Wayne, Charles Kaufman, J. Sub-
mitted Division 1 June 6, 1969, at Detroit. (Docket
Nos. 3,676, 3,725, 3,886, 4,079, 5,142.) Decided No-
vember 25, 1969. Leave to appeal by defendant
Phillips granted February 3, 1970. See 383 Mich
765. Leave to appeal by defendant Lee granted
May 20, 1970. See 383 Mich 784.

Ronald Phillips, Salvatore Pallone, Michael C.
Lee, Larry Lengyel, and Douglas Fields were con-
victed of rape. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief
Appellate Lawyer, and *Angelo A. Pentolino,* Assist-
ant Prosecuting Attorney, for the people.

*Marvin Blake* and *Norman L. Zemke,* on appeal
for defendant Ronald Phillips.

*Gerald David White* (*Verne K. Maxwell,* of coun-
sel), on appeal for defendant Salvatore Pallone.

*Sherwin Schreier,* for defendant Michael C. Lee.

*Seymour Markowitz* (*E. Donald Goodman,* of counsel), on appeal for defendant Larry Lengyel.

*Robert H. Golden,* on appeal for defendant Douglas Fields.

Before: HOLBROOK, P. J., and McGREGOR and BRONSON, JJ.

McGREGOR, J. The five defendants were convicted of rape, MCLA § 750.520 (Stat Ann 1954 Rev § 28.788). The 16-year-old complainant testified that on May 29, 1966, she was raped by four of the defendants at the home of defendant Lee, and that the other defendants assisted. She testified further in the course of the trial that she was physically beaten, thrown to the floor and kicked; that defendants, after tearing all her clothes from her body, pushed her onto the bed and held her, while some had intercourse and/or acts of oral perversion with her. The evidence clearly discloses that all the named defendants during the weekend had consumed a substantial amount of intoxicants.

After the complainant arrived home, she phoned the police relative to the alleged rape and was told by them to go to Wyandotte General Hospital; there she was examined by Dr. Marion Chown, the family doctor. The doctor testified at the trial that the complainant had bruises and fingermarks on the insides of her legs and toward her genitalia, teeth marks on her breasts, and bruises on the sides of her head and arms.

Defendants Lee, Lengyel and Phillips were arrested at 6:00 the following morning, approximately 11 hours after the alleged rape, at a neighborhood drive-in. The three were taken to the Taylor police

department where photographs crucial to this appeal were taken.

Trial began on January 24, 1967, in Wayne county circuit court, and lasted until February 28, 1967. Defendants contended, in part, that the complainant consented to any sexual intercourse which took place and that it was, if anything, an "evening of misadventure of which there was acquiescence." Of the six men charged, one was acquitted. The five convicted defendants raise several issues on appeal which will be dealt with seriatim.

During cross-examination of defendant Lengyel, the prosecutor inquired about the facts and circumstances of his arrest and, over objection as to its relevance, the court permitted the inquiry. Lengyel was asked about any writing that was on his body when arrested and, over objection by counsel, the court permitted the questioning to continue. The arresting officer testified that at the time the three boys were arrested, defendant Lengyel had part of a torn brassiere around his neck and shoulders, that defendant Phillips had prophylactics hanging from both a hat and a T-shirt he was wearing, that an iron cross was painted on his shirt and obscene language on his arms and back, and that defendant Lee also had prophylactics hanging from his shirt.

Photographs taken of defendants after arrest showed the words "fuck you" were painted on defendant Lengyel's back. On the front of defendant Lee's body was the word "fuck" and on defendant Phillips' back appeared words "blow —" and the other words were indistinguishable. The prosecution contended that the photographs were admissible under MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050) which reads:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident

on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Two photographs each of defendants Lengyel, Lee and Phillips were admitted into evidence and were shown to the jury. Defense counsel objected on the ground that the evidence of the appearance of the defendants at the time of their arrest was inadmissible.

The first question is whether the trial court committed reversible error in admitting the photographs and allowing testimony concerning the circumstances of the arrest of some of the defendants.

Judge J. H. GILLIS, in a well-developed opinion concerning the admissibility of photographs as evidence, said, in *People* v. *Turner* (1969), 17 Mich App 123, 130,

"In every case, the determination of the admissibility of photographs is left to the sound discretion of the trial court."

and again, in *People* v. *Turner, supra,* 132, we read,

"It may be presumed that today's jurors, inured as they are to the carnage of war, television and motion pictures, are capable of rationally viewing, when necessary, a photograph * * *""

The rule in Michigan is that photographic evidence of a potentially prejudicial nature is admissible only if its probative value outweighs its possible prejudicial effect (see *People* v. *Turner, supra; People* v.

*Becker* (1942), 300 Mich 562; *People* v. *Freeman* (1965), 1 Mich App 63; *People* v. *Jenkins* (1968), 10 Mich App 257), particularly if the circumstances of the arrest tended to connect the defendants with the alleged offense.   There was nothing gruesome about the photographs.

Assuming without deciding that the photographic and testimonial evidence relative to defendants' arrest was inadmissible because it may have lacked probative value, the Court does not find that it was so prejudicial and inflammatory in nature as to constitute reversible error.   It is regrettable that under contemporary standards the use of the words inscribed on the defendants' bodies have become so prevalent, but since they have, the Court does not consider them to be *ipso facto* inflammatory.   In any event, the final analysis must be whether the evidence so tainted and permeated the trial proceedings that a fair and impartial trial could not result.   These photographs were helpful to the jury in weighing the denial of guilt by the defendants and the probability of their having committed the offense charged, *viz.,* forcible rape.   The claim of the prosecution that the photographic evidence was not inflammatory is further buttressed by the fact that one of the six defendants was acquitted.

Defendants further contend that prosecutory misconduct denied them a fair trial.   Sixteen volumes of transcript, of approximately 2,624 pages, attest to a long and arduous trial.   In answer to the charges by defendants on this point, the defense counsel must assume a considerable share of the criticism, if any should lie.   This Court finds the following quotation applicable to this difficult trial:

"Great care should be taken by prosecuting officers and trial courts that no statement be made in the presence of jurors which would jeopardize a de-

fendant's right to a fair trial. But in the haste and heat of a trial it is humanly impossible to obtain absolute perfection, and of necessity some allowance must be made in determining whether impromptu remarks are to be held prejudicial. Statements should not be held prejudicial if they are made in good faith, and, when fairly construed, they do not appear to have been such as influenced the jury adversely to the rights of the accused." *People* v. *Burnstein* (1933), 261 Mich 534, 538.

"*Burnstein, supra,* is quoted with approval in *People* v. *Logie* (1948), 321 Mich 303, and *People* v. *Hoffman* (1965), 1 Mich App 557. The latter two cases again state that the test to be applied is not whether there were some irregularities but instead did the defendant have a fair and impartial trial." *People* v. *Williams* (1968), 11 Mich App 62, 66.

"We have examined the record carefully, and note that the case was hotly contested, but we are not convinced the remarks complained of influenced the jury adversely to the rights of the defendants." *People* v. *Delano* (1947), 318 Mich 557, 569.

Although some of the defendants contend that they should have been tried separately, an examination of the trial transcript does not reveal that any motion for separate trial or objections to the joint trial were made.

In the charges to the jury, the court instructed the jurors that while the defendants were being tried together, it was their duty to consider the case of each defendant separately, as though he were on trial alone. The fact that the jury was able to sift all the evidence, acquitted one defendant (Larry Beech) and convicted the five defendants herein, shows no apparent prejudice by the jury.

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of

misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opin-ion of the court, after an examination of the entire cause, *it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.*" (Emphasis added.)    MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096).

Our system of criminal justice is based upon the idea of striking a fair balance, of providing a minimum risk that an innocent person will not be convicted. This the learned trial judge did, even in the frustrating heat of a bitterly contested trial. The trial record does not disclose a miscarriage of justice.

Other errors complained of are without sufficient merit to change the outcome of this opinion.

Convictions affirmed.

HOLBROOK, J., concurred.

BRONSON, J., (*dissenting*). Defendants Lengyel, Lee, and Phillips were together when arrested in the early morning of May 30, 1966. The arresting officer testified that at the time of the arrest certain writings were on the bodies of each man. He stated further that defendant Lengyel had a torn brassiere around his neck and that defendants Lee and Phillips had prophylactics hanging from their clothing. Shortly after their arrival at the police station, the three were photographed nude from the waist up in both front and rear positions, the latter admittedly being unusual police procedure. The photographs do not depict the brassiere or the prophylactics but show that written on the backs of defendants Lengyel, Lee, and Phillips, respectively, were the words

"fuck you", "let's fuck", and "blow —", the last word being indistinguishable, but presumably being "me".

At trial, the prosecutor offered the photographs into evidence pursuant to MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050), which provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

It was the people's contention that the photographs were relevant to show the intent of defendants at the time of the alleged offense, some 10 to 12 hours earlier. The trial court at first rejected this argument but stated that the photographs may be admissible to portray the circumstances of the arrest.

In concert, defense counsel strongly objected on the ground that the evidence concerning defendants' appearance at the time of their arrest was inadmissible under either theory. They began by pointing out that the writing in the photographs was not defendants' own handiwork. In fact, the only explanation of the writing was a reference made during cross-examination of defendant Lengyel that Dennis Woodward had written on the three defendants during a time after the alleged offense while they slept. Objecting as well to the testimony of the arresting officer, defense counsel noted the absence of any testimony showing that the writing

was present at the time of the alleged offense, or that any prophylactics had been used.

They contended further that intent was not a material element of the offense charged, that defendants' appearance 10 to 12 hours after the offense allegedly took place was totally irrelevant to the issues in the case, and that the photographs were offered solely for the purpose of inflaming the minds of the jurors.

After extensive debate, the trial court ruled as follows:

"It would appear to me that either as evidence of the circumstances and what the conditions were of these defendants at the time of the arrest, they would be admissible there. On the question of 28-.1050, while it is tenuous, * * * it says: Any acts or other acts of the defendant which may tend to show his motive, intent and etc., in committing such a crime may be admissible. It would appear to me here that we have the circumstances, we have the pictures. They may be offered in evidence for what the jury believes to be attributable to these defendants, and if it turns out that all the evidence would indicate that none of this writing is attributable to them, then, of course, the jury can make that finding and not use it against them. But their credibility is on the line here, the pictures were taken at the time of the arrest. This defendant has admitted that those writings were there and that this is an actual representation of what the defendants' pictures looked like at the time."

In response to the objections of counsel for defendants Pallone and Fields regarding the attendant prejudice to their clients from the admission of the photographs, the trial court stated,

"In answer to Mr. D'Avanzo, that there is nothing in evidence regarding his client—and this also applies to Mr. Zitzelberger and Mr. Fields—there is

evidence of a concert of action between all these de-defendants in the testimony. The fact that even if these writings were put on these defendants subsequent to the time of the actual occurrence of the event that we are concerned with here today, if it does show a concert of action or intent or tendency to act on the part of these three—and the evidence further indicates that these three acted with the other three at the time that we are actually concerned with—it would appear to me that on that basis, the court will receive exhibits 6 through 11 inclusive in evidence."

In so ruling, I believe the trial court erred. The statute provides that "like acts or other acts of the defendant which may tend to show his * * * intent" are admissible if intent is material. In a prosecution for rape, intent is not material. To the extent that the photographs were offered to show intent, the statute, being invoked to sanction their introduction into evidence, was misapplied. See *People* v. *Askar* (1967), 8 Mich App 95.

The second evidentiary rule on which the trial court relied in permitting the photographs to be introduced into evidence is stated as follows:

"It is always proper to prove the facts and circumstances attendant upon the arrest of a defendant for the crime for which he is being tried, where such facts and circumstances logically tend in any degree to connect him with the perpetration of the crime." *People* v. *Pierce* (1944), 387 Ill 608, 614 (57 NE2d 345, 348).

See, also, *People* v. *Tomaszewski* (1950), 406 Ill 346 (94 NE2d 154), and *Gardner* v. *Commonwealth* (1954), 195 Va 945 (81 SE2d 614). Since the operative effect of the rule is to permit an inference from guilty conduct to the commission of the wrong-

ful deed,[1] the integrity of the rule depends on the degree of adherence to the requirement that "the circumstance relied upon, whatever it may be, must tend to connect the accused with the specific offense for which he is on trial." *People* v. *Reingold* (1948), 87 Cal App 2d 382 (197 P2d 175, 188).[2]

As a result, the rule is properly invoked only where the evidence sought to be introduced is of words or conduct at the time of arrest which manifest a consciousness of guilt. Offers of bribes, attempts to flee, threats, lies, inconsistent or contradictory statements or the giving of false information or identification exemplify such guilty conduct. In the present case, defendants Lengyel, Lee, and Phillips, at the time of their arrest, neither said nor did anything which manifested a consciousness of guilt. Reliance was placed solely on their appearance from which, for the reasons noted by defense counsel, no inference of guilt may reasonably be drawn.

If an inference of guilt may reasonably be drawn from the circumstances of an arrest, then such evidence is admissible. The weight of such evidence, as indicated by the trial court, is then for the jury to determine, and the defendant is entitled to offer evidence to explain his suspicious conduct. But where, as here, no such inference is reasonable, then the evidence is not admissible. *Spencer* v. *State* (1957), 95 Ga App 454 (98 SE2d 94).

The majority opinion assumes *arguendo* the inadmissibility of the photographs, but concludes that they were not so prejudicial or inflammatory in nature as to constitute reversible error. After a careful review of that portion of the lengthy transcript

---

[1] 2 Wigmore on Evidence, § 273, p 106.

[2] Evidence introduced under MCLA § 768.27, *supra,* is subject to the same requirement. *People* v. *Lundberg* (1961), 364 Mich 596; *People* v. *Charles Williams* (1969) 15 Mich App 683.

dealing with the admission of the photographs, I cannot agree.

At trial, the prosecuting attorney took the position that "insofar as the aspect of inflammatoriness is concerned, if this is a true and accurate description of the circumstances, the inflammatoriness is incidental."

This approach was clearly rejected in *People* v. *Turner* (1969), 17 Mich App 123, where this Court held that even photographs having obvious probative value are inadmissible if such probative value is outweighed by their prejudicial effect. Thus, even if the photographs in the present case had had probative value, they might still have been inadmissible because of the inflammatory nature of their content.

More prejudicial than their content, however, was the way in which they were misused at trial. In the first place, the jury observed much of the lengthy and heated argument of counsel regarding the admissibility of the photographs. Secondly, the prosecutor was permitted to make numerous improper references to the contents of the photographs before they were offered into evidence. In addition, the trial court permitted further discussion of the photographs based upon MCLA § 768.27, *supra,* only to subsequently rule that the statute was being improperly invoked.[3]

Most serious, however, was the prosecutor's open avowal of the true purpose for which he sought to utilize the photographs. On the record, he stated, "If this individual is the kind of individual that allows these things on his body, he also, it would tend to show, would be the kind of individual who would forcibly rape." What followed was a persistent and repeated emphasis on evidence which served to divert the attention of the jury from the principal

_____

[3] As noted above, the trial court later ruled differently.

issues in the case. The culmination came during the people's closing argument to the jury:

"The significance * * * is the type of things that you can deduce from the photographs. Do we have individuals here who will stop at anything in this instance? Not one bit. What kind of an individual would allow, let alone if it were put on, such writings, so soon, a few hours after the incident, on their bodies. And in that instance, it is the theory of the people that the acts and conduct of the defendants, before or after the incident, reflects what the intent may be at the time where the intent is the issue, where there is a question of the matter of the innocence or where there is the question of motive or the malice in terms of wrongful doing, where it becomes a material issue of fact, and here feloniously and did carnally know, then such evidence, it is the theory of the people, is admissible. There is no other reason. We didn't put them in this particular dress that night. They, early in the morning, after they kept drinking, they drove over there. Just to consider the unadulterated—for want of another word—guts. To parade, and while we are at it, on his shoulder, Lengyel says, and I asked him: 'Well, do you know how it got there?'
   " 'I put it there.'
   " 'You put it there?'
   " 'Yes.'
   " 'How?'
   " 'I thought it was a joke.'
   "It is a joke! Now, here again by me, we are attacking the attitude, the demeanor that evidences the intent that was required here."

The obvious import was that defendants, for reasons other than those based upon legitimate evidence, were more likely to have committed the offense for which they were on trial. *Cf. State* v. *McCarthy* (1943), 130 Conn 101 (31 A2d 921); *People* v. *Gougas* (1951), 410 Ill 235 (102 NE2d 152).

As stated in *People* v. *Bartlett* (1967), 256 Cal App 2d 787, 794 (64 Cal Rptr 503, 509):

"Such evidence should have been excluded because its tenuous probative value to show [intent] was far outweighed by its tendency to incite a jury to resolve the issue of guilt or innocence on defendant's character rather than on proof of the essential elements of the crime."

In light of the fact that the photographs were virtually elevated to the level of substantive evidence of the offense, the likelihood that the jury relied on them in their deliberation of defendants' guilt is too great to conclude that defendants' right to a fair trial has not been seriously and substantially impaired. The error is too plain and too egregious not to warrant a new trial. I cannot, therefore, under the guise of "harmless error", endorse what appears to me to be a calculated and studied shortcut to conviction.

The people advanced the theory at trial that the alleged offense was perpetrated jointly by all defendants. In its ruling permitting the photographs into evidence, the trial court stated that "there is evidence of a concert of action between all these defendants in the testimony." The defendants who were not photographed thereby became so inextricably linked with those who were that the attendant prejudice from the introduction of the photographs applied equally to all.

I would reverse the convictions of all five defendants and remand for a new trial.