PEOPLE *v.* FALKNER

OPINION OF THE COURT

1. EVIDENCE—PHOTOGRAPHS—ADMISSIBILITY.

Photographs are not inadmissible into evidence simply because they might prejudice the jury; the test of their admissibility is whether the probative value of such otherwise admissible photographs outweighs their probable prejudicial effect.

2. HOMICIDE—FIRST-DEGREE MURDER—PHOTOGRAPHS—ADMISSIBILITY.

Admitting color photographs of the corpse of a decedent, who was killed by a shotgun fired at close range, in defendant's trial for first-degree murder was not an abuse of discretion where the photographs clarified and illustrated testimony relating to the victim's appearance and condition immediately after death and where, except for defendant's contention that the photographs were prejudicial, the photographs were otherwise admissible.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 12, 13]  29 Am Jur 2d, Evidence § 783 *et seq.*
[3]  29 Am Jur 2d, Evidence § 440.
[4]  58 Am Jur, Witnesses § 865 *et seq.*
[5]  58 Am Jur, Witnesses §§ 675, 696.
[6, 7]  29 Am Jur 2d, Evidence § 277.
[8, 9]  53 Am Jur, Trial § 476.
[10]  21 Am Jur 2d, Criminal Law § 333 *et seq.*
[11]  58 Am Jur, Witnesses § 734 *et seq.*

3. CRIMINAL LAW—ALIBI WITNESSES—CREDIBILITY.

    Alibi witnesses, who have chosen to testify for a defendant, place their credibility in issue and can be questioned concerning the relationship between them and the accused and all the attendant circumstances thereof.

4. CRIMINAL LAW—WITNESSES—CREDIBILITY.

    Prosecutor's asking alibi witnesses about their membership in a group known as the Black Messengers did not constitute reversible error where the defendant, charged with first-degree murder, was a member of the group, even though the murder the defendant was being tried for was purportedly a racially-motivated murder of a white by a black.

5. WITNESSES—OPINION—RELIGION.

    Prosecutor's single reference to the Black Muslims, during cross-examination of a defense witness, did not contravene the statute providing that witnesses may not be questioned about their opinions on religion, either before or after being sworn (MCLA § 600.1436).

6. CRIMINAL LAW—WITNESSES—THREATS BY DEFENDANT.

    Prosecutor's eliciting testimony from a witness concerning defendant's threat that anyone who testified against him would be killed was proper, because testimony showing conduct and declarations of the defendant subsequent to commission of a crime is admissible where the behavior indicates a consciousness of guilt or is inconsistent with innocence.

7. CRIMINAL LAW—DEFENDANT'S COERCING WITNESSES—ADMISSIBILITY.

    Evidence of attempts by a defendant to induce witnesses not to testify may be considered by the fact finders.

8. CRIMINAL LAW—PROSECUTOR'S COMMENT—DEFENSE'S FAILURE TO CALL WITNESS.

    Prosecutor's comment upon defendant's failure to call one who was alleged by a defense witness to have been able to substantiate defendant's alibi was permissible where the defense case was based on alibi and the noncalled witness was available.

9. CRIMINAL LAW—PROSECUTOR'S COMMENT—DEFENSE'S FAILURE TO CALL WITNESS.

    Prosecutor's stating that the reason a person, who a defense witness had stated could support defendant's alibi, had not

been called by the defense was that she was a "go-between" for defense witnesses did not constitute reversible error where the prosecutor's remark was not reiterated, the trial judge *sua sponte* cautioned the jury that the verdict was to be based on the evidence adduced, not the argument of the attorneys, defendant did not object to the remark nor request any instructions, and defendant did not move for a mistrial.

10. CRIMINAL LAW—RIGHT OF CONFRONTATION—CROSS-EXAMINATION —UNCOOPERATIVE WITNESS.

Prosecution witness's conducting herself in a supposedly "unruly, flippant, and evasive manner" during cross-examination did not deny defendant his right of confrontation where any difficulties in questioning the witness were due to the defendant's decision to proceed in proper person and to limit the assistance of his counsel, a respected member of the bar, to an advisory role; the trial judge was constitutionally powerless to deny the defendant's free and unequivocal demands to defend himself.

11. WITNESSES—CREDIBILITY—PRIOR CONVICTIONS.

The credibility of witnesses may be attacked by questions concerning convictions of crime (MCLA § 600.2158).

CONCURRENCE BY BRONSON, J.

12. HOMICIDE — MURDER — EVIDENCE — PHOTOGRAPHS — INFLAMMATORY PHOTOGRAPHS — ADMISSIBILITY.

*The test for admitting possibly inflammatory photographs in a murder trial should not be whether the photographs clarify and illustrate testimony, because all photographs clarify and illustrate; the photographs are admissible only if their probative value outweighs their probable prejudicial effect.*

13. HOMICIDE — MURDER — EVIDENCE — PHOTOGRAPHS — INFLAMMATORY PHOTOGRAPHS — ADMISSIBILITY.

*Color photographs showing the deceased, killed by shotgun fire at close range, were improperly admitted into defendant's trial for first-degree murder where the photographs were admitted to clarify and illustrate testimony relating to the victim's appearance and condition immediately after death, there was no issue as to the victim's identity, his manner of death, or the defendant's alleged malice, and there was ample testimony detailing the extent of the victim's wounds.*

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 June 7, 1971, at Lansing. (Docket No. 10338.) Decided September 27, 1971. Leave to appeal applied for.

Roy E. Falkner, Jr., was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *Paula Hosick,* Chief Appellate Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a jury verdict of guilty of first-degree murder.[1] We recite the facts and allegations of fact. On the evening of August 20, 1968, Ernest Rotholer and his wife were sitting on the front porch of their home in the City of Jackson. Because of oncoming darkness Mr. Rotholer decided, it was testified by his wife, to put his car away and close the garage door. While awaiting her husband's return she heard a "terrific blast of something". Hearing another noise in the back of the house, she ran toward the sound and found her husband lying unconscious on the floor between the back porch and kitchen. She screamed for assistance. A neighbor responded, but death had already ensued.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

The record tends to establish that the search for the murderer focused upon the defendant because of information supplied by a secret informant and two subsequently-discovered material witnesses, Zonnie Armstrong and Jacqueline Edmond.

At the trial both of these witnesses testified that defendant came to an apartment, where Zonnie Armstrong had been staying, sometime between 9 and 9:30 p.m. on the night of the fatal shooting. He claimed he had a gun and offered to let either Miss Edmond or Miss Armstrong shoot it. At his invitation Miss Edmond accompanied him outside where he picked up an unidentified object beside the house. The two proceeded down an alley adjacent to the Rotholer property. Defendant saw the reflection from a flashlight and allegedly said to his companion, "Let's shoot that man". For her own reasons, the girl kept on walking and left defendant behind. Momentarily thereafter she heard a shot followed by a scream. She returned immediately to the apartment where Zonnie Armstrong had remained while the foregoing events transpired. Shortly thereafter defendant entered the apartment and is said to have announced: "I think I shot someone". Miss Armstrong testified on trial that defendant informed her two days later that anyone who incriminated him would be killed.

All of the foregoing was relayed to the police. Both Miss Armstrong and Miss Edmond were placed in protective custody. Defendant was arrested and charged with first-degree murder.

Upon trial by jury, defendant was found guilty as charged. He was sentenced to life in solitary confinement at hard labor.

On appeal defendant asserts initially that the introduction into evidence of colored photographs

of the decedent's body constituted reversible error because of the prejudice engendered thereby, and that the photographs were unessential to the state's case as being merely cumulative and prejudicially inflammatory. Five pictures were taken at the scene of the crime. Some show decedent as found at the site of the killing; one shows the body of the victim taken just prior to the postmortem examination.

We examine this issue.

In *People* v. *Bergin* (1969), 16 Mich App 443, 447, 448, this Court quoted with approval 23 CJS, Criminal Law, § 852(1), pp 352, 353, as to the test of admissibility of photographs which it is claimed might prejudice the jury:

"As a general rule, where photographs are otherwise properly admitted, it is not a valid objection to their admissibility that they tend to prejudice the jury. Ordinarily photographs are not inadmissible merely because they bring vividly to jurors the details of a shocking crime or tend to arouse passion or prejudice, as in the case of unpleasant, gruesome, or horrifying photographs. The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect. Accordingly, photographs should be excluded where their logical relevancy will unquestionably be overwhelmed by the inherently prejudicial nature of the particular picture."

It was the theory of the prosecution that the deceased was killed by a shotgun fired at relatively close range. The photographs, shocking indeed, showed decedent's body literally pockmarked by small pellets. We hold that the pictures, identified as detailing the nature and extent of the wounds inflicted, were admissible for the purposes of clarifying and illustrating testimony relating to the victim's appearance and condition immediately after

death.   We reject the claim that their sole eviden-
tiary purpose was to create inflammatory prejudice.
As otherwise nonobjectionable, they were admis-
sible.   Their admissibility was within the discretion
of the trial judge.   We perceive no abuse thereof.
See *People* v. *Bergin, supra.*

As part of his second assignment of error, defend-
ant has incorporated in "Appendix II" of his brief
numerous reproductions of newspaper articles allud-
ing to a period of racial strife in Jackson sometime
prior to the trial of this cause.   He contends that the
temper of the community was such that the prose-
cutor was obligated to be scrupulously fair in order
to prevent prejudice against a black defendant
charged with what purported to be a senseless,
racially-motivated killing.   With this general prin-
ciple we agree, but we must examine the specifics.
It is contended that even though the prosecutor may
not have committed any single act so grossly preju-
dicial as to require reversal of the judgment of con-
viction, that nonetheless defendant was denied a fair
trial because of the cumulative effect of three alleged
instances of misconduct by the prosecutor.   We
address ourselves to them.

First, objection is made to the cross-examination
of defendant's alibi witnesses concerning their al-
leged membership in a group known as the Black
Messengers.   We have read the trial transcript with
painstaking care.   There was testimony adduced
that the accused was a member of this organization.
Having chosen to testify, the alibi witnesses placed
their credibility in issue and they could be ques-
tioned concerning the relationship between them and
the accused and all the attendant circumstances
thereof.   See *People* v. *Durham* (1912), 170 Mich
598.   We are not persuaded that the single reference

to the Black Muslims, during the questioning of Phillip Smith, contravened the proscription of MCLA § 600.1436 (Stat Ann 1962 Rev § 27A.1436) which provides in relevant part: "No witness may be questioned in relation to his opinions on religion, either before or after he is sworn."[2]

Defendant also objected to the prosecutor's eliciting testimony from Zonnie Armstrong concerning defendant's threat that anyone who testified against him would be killed. Testimony showing conduct and declarations of the defendant subsequent to commission of a crime, when the behavior indicates a consciousness of guilt or is inconsistent with innocence, is admissible. Evidence of attempts by the accused to induce witnesses not to testify may properly be considered by the fact finders. See 62 ALR 136 and cases cited therein.

As the final instance of misconduct by the prosecutor, objection is made to the following excerpts from the state's closing argument commenting upon the failure of defendant's sister to testify in his behalf:

"At this point, I wonder if you considered why his sister Diane wasn't called as one of the defense witnesses, and perhaps, you might consider perhaps Diane in fact was the go-between among the defense witnesses. Not being a witness is no reason why she should not have been in the courtroom apparently. In any event, certainly one would wonder why she was not called as a defense witness."

We must examine the contention in the context of the testimony concerning defendant's sister's involvement in the case. Conflicting statements had been made by defense witnesses as to whether defendant's sister had been present in an apartment

---

[2] On cross-examination, the witness was simply asked whether he had ever heard of or if he had any knowledge about this group.

which she shared with her husband, Ardell Robinson, and the defendant, and where defendant was alleged to have been at the time of the fatal shooting.

The whole crucial defense was alibi. The comment upon failure to call one who was alleged by one defense witness to have been present at the place where defendant was claimed to have been at the time the fatal shot was fired, was well within the limits of permissible argument. See *People* v. *Hunter* (1922), 218 Mich 525, 528. Mr. Justice BIRD observed:

"The statute (citation omitted) protects the defendant from comment or criticism for not taking the witness stand, but the protection is not extended to witnesses. If a witness knows facts which will be helpful to defendant in making his defense, and he is competent and within the reach of defendant, his failure to produce him ought properly to be a subject of comment by the prosecutor."

Nothing in the records suggests that the accused's sister was not available. There was some testimony that she knew facts helpful to the defense of alibi. We can find no error upon which reversal could be predicated in this comment, nor upon it in combination with the others hereinbefore discussed.

The prosecutor did exceed the bounds of permissible comment by suggesting that the sister may have served as a go-between among the defense witnesses. The allegedly-prejudicial statements were not reiterated. However, the trial judge, on his own initiative, carefully instructed the jury that the verdict was to be rendered on the basis of the evidence adduced, not on the argument of either counsel. Defendant neither objected to the comment of the prosecutor, nor did he request any spe-

cific instruction from the trial judge in relation thereto. No motion for a mistrial was made. We cannot predicate reversal on this single unpreserved instance of impropriety.

Defendant next argues that one of the material witnesses held in protective custody, Jacqueline Edmond, conducted herself in such a manner as to deny him his constitutional right of confrontation since the witness's "unruly, flippant and evasive manner" precluded an adequate cross-examination.

Whatever difficulties the defendant experienced in questioning the witness are attributable, in whole or in part, to his own decision to proceed in proper person and to limit the assistance of his counsel, Mr. Guy Christian, a respected member of the Jackson County Bar, to an advisory role. The trial judge was constitutionally powerless to deny defendant's free and unequivocal demands to defend himself. No denial of defendant's right of confrontation occurred.

Next, defendant claims that permitting cross-examination of a defense witness as to a prior criminal conviction, unrelated to the crime charged, and supposedly not having a tendency to prove a lack of veracity, was an abuse of judicial discretion.

Both statute and case law allow attacks upon the credibility of witnesses by questions concerning conviction of crime. MCLA § 600.2158 (Stat Ann 1962 Rev § 27A.2158); *People* v. *Brocato* (1969), 17 Mich App 277. There was no error.

Finally, the claim is made that the judge improperly charged the jury as to the defense of alibi. We quote the challenged excerpt from the charge.

"Now, certain other evidence has been introduced that is known as an 'alibi', which is a claim that the defendant was elsewhere from the scene of the crime

at the time of its commission.  Now, I instruct you
that the defense of alibi is as legitimate as any other,
and if satisfactorily proven, is a complete defense.
However, you should carefully scrutinize the evi-
dence relied upon to prove it, for the reason that an
alibi is a defense that is easily claimed and hard to
disprove.  And, in this connection I instruct you
that the defendant does not have the burden of
proof to establish the alibi; if he offers evidence of
alibi which raises a reasonable doubt in the mind
of the jury as to his guilt, the jury should acquit
him.  I further instruct you that the witnesses who
testify to an alibi are entitled to that credit as other
witnesses, if you think they are telling the truth."

We have examined all the cited authorities, as
well as researching the question independently.  We
find no error.  *People* v. *Virgil Brown* (1969), 15
Mich App 600; *People* v. *Schaner* (1942), 302 Mich
6; *People* v. *Wudarski* (1931), 253 Mich 83; *People*
v. *Marcus* (1931), 253 Mich 410.

We feel the burden of appellate review in all
cases.  In this, because of the brief-alleged existence
of racial overtones, we feel it the more heavily.  We
have read the record with extreme care.  We con-
clude that the essential issue was the weight and
credibility of the testimony of the witnesses who
implicated the defendant and those who testified in
support of his defense of alibi.  By its verdict, the
jury, the sole judge of that weight and credibility,
rejected the proffered defense.  We are not empow-
ered to disturb their verdict, absent reversible error
of law.  We find no single reversible error, nor any
composite of claimed errors, that denied the defend-
ant any safeguards of the judicial system or due
process or equal protection of law.

Perforce, the conviction is affirmed.

Danhof, P. J., concurred.

Bronson, J. (*concurring*).  I concur in the result reached by the majority.  I write separately to state my views about the use of photographic evidence.

As I stated in my dissent in *People* v. *Phillips* (1969), 20 Mich App 103, 117, *aff'd* (1971), 385 Mich 30, "even if the photographs in the present case had had probative value, they might still have been inadmissible because of the inflammatory nature of their content".  That statement applies to this case.

My brethren rely on 23 CJS, Criminal Law, § 852(1), pp 352, 353, which states in pertinent part: "The test of admissibility in such cases is whether the probative value of the photographs outweighs their probable prejudicial effect".  My brothers urge that the probative value of the photographs sufficiently outweighed their prejudicial effect in that they "clarified and illustrated" testimony relating to the victim's appearance and condition immediately after death.  That same reasoning has previously been used by this Court to approve the admission of gruesome photographs into evidence. *People* v. *Eddington* (1970), 23 Mich App 210, 228. I heartily disagree with that rationale.

To admit photographs on this basis would have the effect of nullifying the general rule as stated by CJS, *supra*.  All photographs serve to "clarify and illustrate".  The rule enunciated by my colleagues is overbroad.  There was nothing at issue here which justified the admission of the photographs.  There was no issue as to the victim's identity, his manner of death, or the defendant's alleged malice.  There was ample testimony on the record detailing the extent of the victim's wounds. Whatever probative value these photographs may

have had was outweighed by the possibility of their prejudicial effect.    To allow such photographs into evidence whenever they "clarify and illustrate" testimony is to allow them into evidence under all circumstances.    For numerous cases supporting the proposition here stated, see Anno., 73 ALR2d 769, 802.

I concur in the result because I am convinced, after reading the record, that the result would not have been different had the photographs been excluded.