## PEOPLE v HILL

1. Criminal Law—Arrest—Complaint—Sources of Information.

A complaint in order to provide a basis for an arrest warrant should present information to the magistrate of the operative facts and circumstances relied on by the complaining witness to show probable cause, an indication of the source of the information, and where the source is hearsay, some substantial basis for crediting the hearsay, because where the warrant is based on a complaint which was conclusory and which failed to identify sources of information it is unconstitutionally issued (US Const, Ams 4, 14; Const 1963, art 1, § 11).

2. Arrest—Appeal and Error—Waiver of Defect.

An objection to the validity of an arrest warrant, to be timely, must be made before the defendant submits to the jurisdiction of the court by pleading to the information, because appearance and plea constitute a waiver of any defect in the complaint and warrant.

3. Criminal Law—Evidence—Witnesses—Threats by Defendant—Prejudice.

Testimony in a nonjury trial that the defendant had threatened a witness to keep him from testifying, ordered stricken following defendant's objection, did not cause error because such evidence is admissible and furthermore in the absence of proof to the contrary it is presumed that the judge was not prejudiced and followed the law.

4. Judges—Presumptions—Burden of Proof.

The burden of proving that the judge in a nonjury criminal trial read the preliminary examination transcript was on the defendant and where the record contains nothing to support that claim, it is presumed that the trial court followed the law and refrained from reading the preliminary examination transcript.

References for Points in Headnotes

[1] 5 Am Jur 2d, Arrest § 8.
[2] 5 Am Jur 2d, Arrest § 116 *et seq.*
[3] 53 Am Jur, Trial § 1125.
[4] 46 Am Jur 2d, Judges § 166 *et seq.*

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 October 3, 1972, at Detroit. (Docket No. 12101.) Decided January 16, 1973.

Joseph Hill was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *John L. Thompson, Jr.,* Assistant Prosecuting Attorney, for the people.

*Nussbaum, McEvoy & Moscow, P. C.* (by *John D. Lazar),* for defendant on appeal.

Before: LESINSKI, C. J., and FITZGERALD and J. H. GILLIS, JJ.

J. H. GILLIS, J. Defendant was convicted of armed robbery. MCLA 750.529; MSA 28.797. On appeal we affirm.

On May 14, 1968, two men entered a store owned by Robert Hamel, forced him, his employees, and customers to lie on the floor at gunpoint, took the money from the cash registers, and fled. Defendant was later identified by Mr. Hamel, apparently from a photograph, and police sought and obtained a warrant for his arrest.

The complaint[1] which provided the basis for the arrest contained a bare recitation of the crime in

---

[1] "The complaint and Examination of the above-named COMPLAINING WITNESS taken and made before the undersigned Judge (or Acting Judge) of the above-named MUNICIPAL OR DISTRICT COURT, upon the date indicated below, who being duly sworn says that heretofore on the DATE OF OFFENSE listed above, at the LOCATION listed above in the County of Wayne, State of Michigan, the above-named Defendant(s), [Joseph Hill] late of the County of Wayne, did assault the above-named COMPLAINANT while armed

the statutory language. It named the defendant as the perpetrator, and was signed by the police detective as the complaining witness. It was primarily stated in conclusory terms. None of the underlying facts which formed the basis for the conclusions were given. Although sworn to by the police detective, it contained no affirmative allegation that it was made on his personal knowledge. Indeed, the nature of the crime made it appear unlikely that it had been witnessed by a police detective, such that he could have had personal knowledge of the commission of the crime or the identity of the defendant.

The people admit in their brief that:

"The complaint in the instant case was made positively by the officer who signed as complainant, but was in fact made on information and belief of that officer from information received from the victim and *res gestae* witness to the armed robbery."

On appeal, defendant contends that that document could not support the independent judgment of a disinterested magistrate as to the existence of probable cause to believe the defendant guilty of the crime charged. Since that document was defective, his arrest under it constituted a violation of the rights guaranteed him by the Fourth and Fourteenth Amendments. Furthermore, since his arrest was illegal, jurisdiction over his person never attached, and his conviction is void.

The requirements for a valid arrest warrant under the Fourth and Fourteenth Amendments

with a dangerous weapon or an article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, to-wit: a gun and did then and there feloniously rob, steal and take from the person of said COMPLAINANT, or in his presence, $150.00, contrary to Sec. 750.529, C.L. 1948 as amended by P.A. 1959, No 71."

have been set forth in *Giordenello v United States,* 357 US 480; 78 S Ct 1245; 2 L Ed 2d 1503 (1958), and most recently in *Whiteley v Warden of Wyoming State Penitentiary,* 401 US 560; 91 S Ct 1031; 28 L Ed 2d 306 (1971).

"The purpose of the complaint, then, is to enable the appropriate magistrate, here a commissioner, to determine whether the 'probable cause' required to support a warrant exists. The commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." *Giordenello, supra,* 357 US 480, 486; 78 S Ct 1245, 1250; 2 L Ed 2d 1503, 1509 (1958).

In order to accomplish this result, the magistrate must at the very least be supplied "the facts relied on by a complaining officer" and not merely his conclusions. It must appear that the affiant spoke with personal knowledge, or else the sources for his belief must be indicated. Where his belief is based on information from other persons, some basis for their credibility must be shown.

"*Giordenello v United States, supra,* and *Aquilar v Texas,* 378 US 108 [; 84 S Ct 1509; 12 L Ed 2d 723 (1964)], established that a magistrate is intended to make a neutral judgment that resort to further criminal process is justified. A complaint must provide a foundation for that judgment. It must provide the affiant's answer to the magistrate's hypothetical question, 'What makes you think that the defendant committed the offense charged?' This does not reflect a requirement that the Commissioner ignore the credibility of the complaining witness. There is a difference between disbelieving the affiant and requiring him to indicate some basis for his allegations. Obviously any reliance upon factual allegations necessarily entails some degree of reliance upon the credibility of the source. See, *e.g.,*

*Johnson v United States,* 333 US 10, 13 [; 68 S Ct 367, 368; 92 L Ed 436, 439 (1947)]. Nor does it indicate that each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint. Compare *United States v Ventresca,* 380 US 102 [; 85 S Ct 741; 13 L Ed 2d 684 (1965)]. It simply requires that enough information be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." *Jaben v United States,* 381 US 214, 224–225; 85 S Ct 1365, 1371; 14 L Ed 2d 345, 353 (1965).

These constitutional requirements of the Fourth Amendment are applicable to the states through the Fourteenth Amendment. *Ker v State of California,* 374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963). See *People v Moreno,* — Colo —; 491 P2d 575 (1971); *State v Saidel,* 159 Conn 96; 267 A2d 449 (1970); *State v Licari,* 153 Conn 127; 214 A2d 900 (1965).

Michigan has not hesitated to acknowledge the binding effect of these requirements in cases involving search warrants. *People v Dogans,* 26 Mich App 411, 418–419 (1970); *People v Zoder,* 15 Mich App 118, 122–123 (1968). And when an arrest warrant is sought upon a complaint expressly made on information and belief, we have always required the magistrate to make further inquiry in order to satisfy himself that the probable cause required to support a warrant exists. *People v Heffron,* 53 Mich 527 (1884). See *Brown v Hadwin,* 182 Mich 491, 497 (1914); *Curnow v Kessler,* 110 Mich 10, 13 (1896).

Unfortunately, there has developed in Michigan a curious exception to that rule. Where a complaint purports to be made on personal knowledge,

then, no matter how conclusory the statements and absurd the presumption of personal knowledge, these minimum requirements are no longer enforced. At least, " * * * it is incompetent for a defendant, upon arraignment, to impeach the complaint by showing a lack of knowledge by the complaining witness". *People v Mosley,* 338 Mich 559, 564 (1953). See *People v Davis,* 343 Mich 348, 354, 355 (1955).

This long-standing rule has apparently never been challenged in light of *Giordenello, supra,* and cases interpreting it. It was acknowledged in *People v Roney,* 7 Mich App 678, 680–681 (1967) (where the distinction between the two types of complaints and the resulting disparate lines of cases are analyzed), without reference to any possible conflict with United States Supreme Court cases interpreting the Fourth Amendment.

The rule allows judicial activity which fails to comport with constitutional requirements. It encourages misleading complaints by police officers and ridiculous presumptions by magistrates. The *Roney* case provides a good example: there, the warrant was issued on the complaint of a Detroit policewoman who alleged the commission of the crime of statutory rape on her own knowledge and not on information and belief. We consider it extremely unlikely that the rape occurred in the presence of the policewoman. It is equally unlikely that the armed robbery perpetrated in the instant case occurred in the presence of the police detective who made the complaint purportedly on personal knowledge. Certainly it must have appeared unlikely to the magistrate who issued the warrant. Yet, under the Michigan case law, the magistrate was allowed to make the unreasonable assumption that the officer was swearing on personal knowl-

edge. He was thus relieved of the duty, required by constitution and statute,[2] to make further inquiry in order to satisfy himself as to the existence of probable cause based on his own conclusions, not the complainant's.

This state has never countenanced such exaltation of form over substance in the case of search warrants. In *People v Zoder, supra,* this Court reversed a conviction because evidence which had been seized under a defective search warrant was erroneously admitted at trial. The defect was an affidavit which

"did not state whether the affiant spoke with personal knowledge of the matters contained therein * * * Martha Cox's affidavit did not state the sources of her belief and failed to provide a basis for an independent finding of probable cause by the magistrate." *People v Zoder, supra,* pp 120–123.

The authority relied on by the *Zoder* Court for the principle that the source of an affiant's knowledge must be identified and the magistrate's decision must be independent was *Giordenello v United States, supra,* which involved a defective *arrest* warrant. Surely if these principles as articulated by the United States Supreme Court in an arrest warrant case apply in Michigan to search warrants, there is no rational basis for denying their application to arrest warrants.

It is axiomatic that the constitutional requirements as to probable cause which apply to search warrants apply as well to arrest warrants. *Giordenello v United States, supra; Aguilar v Texas,* 378 US 108, 112–113; 84 S Ct 1509, 1512–1513; 12 L Ed 2d 723, 727 (1964); *Whiteley v Warden, supra.* As

---

[2] US Const, Ams IV, XIV; Const 1963, art 1, § 11; MCLA 766.2; MSA 28.920.

was noted by the Supreme Court of Errors of Connecticut:

"Indeed, it is obvious that the amendment's reference to 'persons * * * to be seized' is inapt to refer to anything other than a seizure of the person, which certainly is inclusive of an arrest. And on principle there would be no reason for throwing stringent constitutional safeguards around the seizure of property, while providing no similar safeguards around the seizure, *i.e.,* arrest, of persons." *State v Licari, supra,* 132.

At a minimum, those safeguards require that the information presented to the magistrate when the arrest warrant is requested contain:

1) the operative facts and circumstances relied on by the complaining witness to show probable cause, and not merely that witness' conclusions that the defendant committed a crime;

2) an indication of the sources of the information, *i.e.,* personal knowledge and observation; reports from victims and eyewitnesses; police investigations; information from informers, etc.;

3) where the source is hearsay information from an informer (other than a victim-eyewitness), some substantial basis for crediting the hearsay must appear.[3] *Giordenello v United States, supra; Aguilar v Texas, supra; Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1968).

The reasoning of cases typified by *People v Mosley, supra,* practically ensures that these minimum requirements will not be met. Those cases condone the magistrate's abdication of his decision-making responsibility by allowing unquestion-

[3] Compare *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *People v Zoder,* 15 Mich App 118, 122–123 (1968), with *United States v Bell,* 457 F2d 1231, 1238–1239 (CA 5, 1972), for the rationale behind the distinction between information from victim-eyewitnesses and other informers.

ing reliance on conclusory complaints based on hearsay and other sources which are never identified, and, in any case, preclude the defendant from successfully challenging the legality of the warrant upon a timely objection. That such a practice is constitutionally impermissible is unequivocally stated in *Coolidge v New Hampshire,* 403 US 443, 450; 91 S Ct 2022, 2029; 29 L Ed 2d 564, 573 (1971); *Whiteley v Warden, supra; Giordenello v United States, supra.*

The warrant in the instant case was based on a complaint which was conclusory and which failed to identify sources of information. It was, therefore, unconstitutionally issued. We must next determine its effect on defendant's arrest and subsequent proceedings, and whether objection was timely made.

The validity of an arrest is immaterial to the validity of a subsequent conviction when the trial court had jurisdiction of the offense charged and acquired jurisdiction of defendant's person by the filing of an information and an appearance by defendant. *People v Licavoli,* 256 Mich 229 (1931); *United States ex rel Penachio v Kropp,* 448 F2d 110, 111 (CA 6, 1971).[4] See also *People v Miller,* 235 Mich 340 (1926); *People v Henry Robinson,* 37 Mich App 115 (1971); *People v Nawrocki,* 6 Mich App 46 (1967), holding that the legality of a de-

---

[4] See *Lurie v District Attorney of Kings County,* 56 Misc 2d 68; 288 NYS2d 256 (S Ct, 1968), for a thorough analysis of these issues. As it noted therein, we are not concerned with cases which hold that even illegally kidnapping a defendant to bring him within the jurisdiction does not prevent the court from acquiring personal jurisdiction. See *Frisbie v Collins,* 342 US 519; 72 S Ct 509; 96 L Ed 541 (1952); *People v Eberspacher,* 79 Hun 410; 29 NYS 796 (1894). In those cases, there existed a validly issued arrest warrant which, if properly executed within the county, would have resulted in jurisdiction of the person. Once brought *within* the jurisdiction, even forcibly, the validly issued warrant was effective to confer upon the court jurisdiction of defendant's person.

fendant's arrest cannot be considered *at trial;* however, all of these cases dealt with arrests without a warrant and, therefore, did not address the issue before us. Objection to the validity of the arrest warrant, to be timely, must come before the defendant submits to the jurisdiction of the court by pleading to the information.

An excellent discussion of the competing considerations involved in this issue is to be found in *State v Raskin,* 30 Wis 2d 39, 47; 139 NW2d 667, 671–672 (1966):

"By the time the preliminary examination has been completed (or waived) and there has been a bindover, probable cause has been found by an independent and neutral magistrate that the defendant has committed a crime. The reason a defendant should be permitted to raise the invalidity of his arrest under *White [State ex rel White v Simpson,* 28 Wis 2d 590; 137 NW2d 391 (1965)] when he appears in the trial court and prior to actual arraignment and entry of a plea, is to enforce the purpose of the *White* rule which is to assure that arrest warrants will be issued only on probable cause as determined by a neutral magistrate. If the state, at the first appearance (as distinguished from arraignment) following the bindover, could gain the dismissal of the motion attacking the validity of the arrest (on the grounds of *White)* by pointing to the results of the preliminary, the beneficial effect of the *White* ruling on prosecution practices would be almost completely negated." See *State v Saidel, supra; State v Licari, supra.*

In the instant case, defendant did not object to the validity of the arrest warrant until appeal. His objection comes too late. His appearance and plea to the information constituted a waiver of any defect in the complaint and warrant.[5]

[5] We call to the attention of the bar the proposed amendment to GCR 1963, 785, published on order of the Michigan Supreme Court, dated May 15, 1972, with comments to be made to the Chief Justice. The proposed rule reads, in pertinent part: "785.6(2) A plea of not

Defendant's second assignment of error relates to the prosecutor's elicitation of testimony that defendant had threatened a witness to keep him from testifying. The trial judge sustained defendant's objection and ordered the testimony stricken. Nevertheless, defendant alleges that the trial judge may have erroneously considered that testimony in reaching his verdict since it does not affirmatively appear in his findings of fact that he did not.

In fact, such evidence is admissible; thus even if the trial court considered the testimony, no error resulted. *People v Falkner,* 36 Mich App 101, 108 (1971). Furthermore,

> "in the absence of proof to the contrary, it is presumed that the trial judge was not prejudiced and followed the law. *People v Farmer,* 30 Mich App 707 (1971)." *People v Vasquez,* 39 Mich App 573, 574 (1972).

Finally, defendant contends that there is a possibility that the trial judge looked at the preliminary examination transcript, thus requiring reversal of defendant's conviction. The assumption that the trial judge examined said transcript is unwarranted. The trial court's question, "Does anyone have a copy of it?" in referring to the preliminary examination transcript, and defense counsel's indication that he had the sole copy, tends to indicate that the trial court did not even have a copy of the preliminary examination transcript. In any case, there is nothing in the record to support defendant's claim. The burden of proof in this regard is

_____

guilty puts in issue every material allegation of the accusatory pleadings and shall be construed as a denial of every material allegation in the indictment or information *and shall not be deemed a waiver of the rights of defendant to thereafter raise any factual, jurisdictional or legal defense."* (Emphasis supplied.) 51 Michigan State Bar Journal 7, 437–439 (1972).

on the defendant. Absent proof, it is presumed that the trial court followed the law and refrained from reading the preliminary examination transcript. *People v Farmer, supra.*

Affirmed.

All concurred.