## PEOPLE v SHOLL

Docket No. 106139. Decided December 30, 1996. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court. Rehearing denied 454 Mich 1211. ·

Daniel C. Sholl was charged in the Eaton Circuit Court with one count of third-degree criminal sexual conduct. The court, G. Michael Hocking, J., declared a mistrial when the jury was unable to reach a verdict. On retrial, the defendant was convicted by a jury of third-degree criminal sexual conduct. The Court of Appeals, DOCTOROFF, C.J., and MICHAEL J. KELLY and MARKEY, JJ., reversed in an unpublished opinion per curiam, finding error in the admission of certain testimony by the investigating officer regarding an interview of the defendant following *Miranda* warnings that was offered without objection by the defendant, in the admission of evidence regarding a threat made against the complaining witness, and in the admission of evidence that the defendant had used marijuana on the evening he and the complainant had sexual relations (Docket No. 174132). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice BRICKLEY and Justices BOYLE, RILEY, MALLETT, and WEAVER, the Supreme Court reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court.

1. *Doyle v Ohio*, 426 US 610 (1976), precludes use of a defendant's post-*Miranda* silence for impeachment as a violation of due process rights. Legitimate issues can arise concerning the application of *Doyle* where a defendant places limits on willingness to speak with the police. In this case, it is clear that the defendant generally was prepared to talk with the police. On the facts, there was no error that would warrant reversal.

2. A defendant's threat against a witness generally is admissible as demonstrating consciousness of guilt. A threatening remark, while never proper, might in some instances simply reflect the understandable exasperation of a person accused of a crime that the person did not commit. However, it is for the jury to determine the significance of a threat in conjunction with its consideration of other testimony.

3. There are substantial limits on the admissibility of evidence concerning other bad acts. Nevertheless, it is essential that the jury be given an intelligible presentation of the full context in which disputed events took place. The presence of marijuana could have affected more than the defendant's memory; it could have affected his behavior. In this case, the jury had to decide what happened during a private event between two persons. The more the jurors knew about the full transaction, the better equipped they were to perform their sworn duty.

Reversed.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the defendant should be ordered to show cause why his conviction should not be reinstated before the Supreme Court decides to peremptorily reverse the judgment of the Court of Appeals affirming the defendant's conviction. Further, leave to appeal either should be denied or granted. Peremptory reversal should be reserved for those cases in which the law is settled and no factual assessment is required. In this case, factual assessment appears to be required, and the law is not settled; thus, peremptory disposition is not appropriate. Peremptory disposition does not provide a safe basis either for resolving individual cases or for promulgating precedent.

*Frank J. Kelley*, Attorney General, *Jeffrey L. Sauter*, Prosecuting Attorney, and *William M. Worden*, Senior Assistant Prosecuting Attorney, for the people.

PER CURIAM. At the conclusion of a jury trial, the defendant was convicted of third-degree criminal sexual conduct. The Court of Appeals reversed, finding three instances of error. We reverse the judgment of the Court of Appeals and reinstate the defendant's conviction.

I

In this case, the defendant and the complainant were in the initial stages of a dating relationship. They had spent time together on several occasions.

On a January evening in 1992, they had sexual intercourse. The defendant says that the sexual relations were voluntary. The complainant says that they were accomplished through force or coercion.

The defendant was charged with one count of third-degree criminal sexual conduct. MCL 750.520d(1)(b); MSA 28.788(4)(1)(b). A September 1992 trial ended in a mistrial, when the jury was unable to reach a verdict. The defendant was tried again in August 1993. The second jury found him guilty, as charged.

The defendant was sentenced to a term of thirty months to fifteen years in prison. The circuit court denied his motion for new trial.

As indicated, the Court of Appeals reversed the conviction, finding three errors in the trial.[1] The Court of Appeals later denied rehearing.[2]

The prosecutor has applied to this Court for leave to appeal.

II

The first error identified by the Court of Appeals was the admission of certain testimony from the investigating officer. He had interviewed the defendant two weeks after the incident (and about three months before an arrest warrant was issued). After giving the defendant the familiar *Miranda*[3] warnings,

---

[1] Unpublished opinion per curiam, issued January 26, 1996 (Docket No. 174132).

[2] Judge MARKEY indicated that she "would grant rehearing, at least to clarify that a reversal allows for retrial."

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

he questioned the defendant. Here is the officer's testimony:

*Q.* Did you tell him why you asked him to come in to speak to you?

*A.* Yes, I contacted him and had him come into the office, that I was investigating a sexual assault case wherein he was the alleged perpetrator.

*Q.* In the course or your conversation with him, did you ask him if he had had intercourse with [the complainant]?

*A.* Yes, I did.

*Q.* And what did he say?

*A.* He denied to answer that and further stated that he felt that that was up to her to prove that.

*Q.* Now, were you present when the Defendant testified [at the first trial]?

*A.* Yes.

*Q.* And what did he say about that having intercourse with [the complainant] that day?

*A.* If I remember correctly, he indicated that they did have but it was consensual.

*Q.* But he didn't say that to you when you interviewed him, is that correct?

*A.* No, he did not.

*Q.* Did you ask him about other events on that evening of what occurred?

*A.* After—as far as he indicated that he would talk with me in reference to the relationship, as far as other incidents that evening that we got into that later.

*          *          *

*Q.* What did he say about what they did during the time that they were alone together?

*A.* He indicated that there was some contact between the two of them. There was some kissing and hugging. And I believe he used the term—there was intimacy between them.

*Q.* Did he ever say that they had intercourse?

*A.* No, he did not.

*Q.* His only statement regarding intercourse was that she
had to prove that, is that correct?

*A.* Correct.

The Court of Appeals noted that the defendant did
not object to the introduction of this evidence, but
nonetheless found it to be error that warranted
reversal:

> An investigating police officer testified in the prosecu-
> tion's case in chief that defendant exercised his right to
> remain silent when questioned about whether he had inter-
> course with complainant. Although there was no objection
> to this evidence at trial, the issue involved a significant con-
> stitutional question, and we follow *People v Alexander*, 188
> Mich App 96; 469 NW2d 10 (1991), where this Court deter-
> mined that the prosecution cannot deliberately inject a
> defendant's silence after the defendant has been given
> *Miranda* warnings. *Miranda v Arizona*, 384 US 436; 86 S Ct
> 1602; 16 L Ed 2d 694 (1966). This is not a question of
> impeaching defendant by his somewhat ambivalent exercise
> of his *Miranda* rights after he has testified. This is a ques-
> tion of presenting to the jury in the prosecution's case in
> chief, before it could even know if defendant were going to
> take the stand, that he had affirmatively asserted his right
> to remain silent as to a question propounded to him by an
> investigating police officer when he was the focus of
> investigation.

For many years, the leading authority with regard
to the prosecution's right to question a defendant's
silence was *People v Bobo*, 390 Mich 355; 212 NW2d
190 (1973). Recent years have brought several clarify-
ing decisions, beginning with *People v Collier*, 426
Mich 23; 393 NW2d 346 (1986), in which we
approved cross-examination with regard to a defend-
ant's prearrest failure to tell the police the version of
the crime that he later offered in his trial testimony.

A trilogy of post-*Bobo* cases was decided in 1990. *People v Cetlinski,* 435 Mich 742; 460 NW2d 534 (1990), *People v McReavy,* 436 Mich 197; 462 NW2d 1 (1990), and *People v Sutton (After Remand),* 436 Mich 575; 464 NW2d 276 (1990).

In *Cetlinski,* we again permitted a defendant to be impeached with prearrest and pre-*Miranda* statements, including omissions within those statements:

> We hold that the use for impeachment purposes of a defendant's prior statement, including omissions, given during contact with the police, prior to arrest or accusation, does not violate the defendant's constitutional rights as guaranteed under the Fifth and Fourteenth Amendments or the Michigan Constitution. Indeed, long before *Jenkins v Anderson* [447 US 231; 100 S Ct 2124; 65 L Ed 2d 86 (1980)], the United States Supreme Court had held the Fifth Amendment was not violated by impeachment of a testifying defendant with voluntarily given prior inconsistent statements. *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971). The use of a defendant's prearrest, pre-*Miranda* "statements" for impeachment purposes is one of relevancy, and evidentiary matter. The threshold inquiry is whether this evidence makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. See *Collier, supra,* p 36.

> *          *          *

> The statement of a party opponent is defined as an oral or written assertion or nonverbal conduct, MRE 801(d)(2). For impeachment purposes, the failure to assert a material fact when formerly narrating on the matter now dealt with amounts to an assertion, or statement, of the nonexistence of the fact. Thus, as an evidentiary matter, omissions from an affirmative voluntary response to questions about the same subject matter testified to at trial do not constitute "silence." Rather, they are "prior inconsistent statements," and can be used to impeach testimony at trial in which the

witness admitted the fact's existence. As the *Jenkins* Court noted, the "[u]se of such impeachment on cross-examination allows prosecutors to test the credibility of witnesses by asking them to explain prior inconsistent statements and facts." *Id.*, p 238.

As stated above, when an individual has not opted to remain silent, but has made affirmative responses to questions about the same subject matter testified to at trial, omissions from the statements do not constitute silence. The omission is nonverbal conduct that is to be considered an assertion of the nonexistence of the fact testified to at trial if a rational juror could draw an inference of inconsistency. To be sure, the witness may explain the omission by a desire not to implicate himself or because of a lapse of memory. Such explanations, however, do not remove the relevance of the inconsistency. [435 Mich 746-749.]

In *McReavy*, the defendant was given *Miranda* warnings and agreed to speak with the police. In its case in chief, the prosecutor presented the testimony of the arresting officers, who talked about the defendant's demeanor during questioning, and his failure to respond to some of the questions from the police during a conversation when he answered other questions. In its analysis, this Court contrasted the situation in which a defendant refuses to say *anything* after being given *Miranda* warnings.

In *Sutton*, a defendant claimed that he gave an exculpatory statement to the police after being arrested and receiving his *Miranda* warnings. The police impeached him on rebuttal with testimony that he had not given such a statement to them. This Court found such testimony proper.

In all three of these cases (*Cetlinski, McReavy,* and *Sutton*), this Court talked about the rule of *Doyle v Ohio,* 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976).

As this Court explained in each opinion, *Doyle* precludes the use of a defendant's post-*Miranda* silence, since it would violate the right to due process to so impeach a defendant who may have been relying on the governmental assurance that his silence would not be used against him.

In *McReavy*, this Court noted the potential problem that can arise when a defendant has received *Miranda* warnings and then offers limited responses to police questions. Concerning the possible interplay with *Doyle*, this Court said:

> Unlike the situation in *Anderson, Warden v Charles*[4] or *People v Cetlinski*, the instant case involves the use of defendant's statements and demeanor as substantive evidence of guilt. In situations where a defendant voluntarily waives his Fifth Amendment right to be silent, makes some statements, and then fails to respond to other questions, the focus of the inquiry is whether the defendant is now manifesting either a total or selective revocation of his earlier waiver of Fifth Amendment rights and whether that revocation is induced by the implicit assurances contained in the *Miranda* warnings. If it is concluded that a defendant's lack of response constituted invocation of the right to remain silent which was induced by the government, the failure to respond would again present the "insoluble" ambiguity that *Doyle* forbids. While we have no occasion here to state what conduct short of a formal exercise of the Fifth Amendment right to remain silent or a request for counsel would constitute an invocation, wherever that line is eventually to be drawn, it is not on the facts of this case. [436 Mich 218-219.]

---

[4] *Anderson, Warden v Charles*, 447 US 404; 100 S Ct 2180; 65 L Ed 2d 222 (1980).

The present case has the potential for a *Doyle* problem, since the officer's testimony concerned a conversation that occurred after the defendant had been given *Miranda* warnings. However, it is clear from the testimony (which was received without objection) that the defendant was generally prepared to talk with the police. In such a conversation, his statements, the manner in which he phrased those statements, and his varying degrees of candor all were fit matters for the jury to consider.

As we noted in *McReavy*, legitimate issues can arise concerning the application of *Doyle* where a defendant places limits on his willingness to speak with the police. However, on the facts of this case, in which no objection was offered,[5] we find no error that would warrant reversal.

### III

The second ground on which the Court of Appeals reversed the defendant's conviction is that evidence was introduced regarding a threat that the defendant made against the complaining witness. The Court of Appeals said that the "belated threat, if it was a threat, was irrelevant under MRE 402."[6]

This matter was broached during the direct examination of the investigating officer. He was asked whether, in the course of his investigation, he became aware of a threat against the complainant. Defense

---

[5] Perhaps the lack of objection stems from the fact that the disputed evidence concerns the question whether there was intercourse, not whether the intercourse was voluntary. The latter point was the focus of the trial.

[6] In reversing, the Court of Appeals cited *People v Burton*, 433 Mich 268; 445 NW2d 133 (1989). However, *Burton* concerns a different question.

counsel immediately objected, and the witness then testified on a separate record.

The officer explained that in February 1993 (between the first and second trials) he received a phone call from the complainant, who had been told by another individual that the defendant had threatened her. The officer then spoke to the defendant, asking whether he had talked about killing the complainant. The defendant denied having discussed using a gun to shoot the complainant, but acknowledged that, while intoxicated, he "probably did say something like that."

The circuit court ruled that the testimony would be admitted:

> All right. Well, I haven't heard an objection yet that's valid. I've heard immaterial. It's certainly material. It could make a difference in this case.
>
> It's certainly relevant. It pertains to the relationship and the Defendant's perception of [the complainant's] allegations against him. I don't—all relevant, material evidence that's produced against the Defendant is prejudicial or it wouldn't be relevant. It has a tendency to prove guilt.
>
> Whether it's more prejudicial than probative is the question. And the Defendant made a statement surely could be interpreted in a different fashion. In this case it could be interpreted as a statement of a person who felt that he'd been subjected to tremendous injustice.
>
> On the other hand, it could be the statement of a person who feels that he's going to seek revenge because someone brought him to the bar of justice. Those are basically the two inferences that could be drawn.
>
> Now, I'm going to allow the statements that were made by the Defendant. So what I would suggest to avoid all this other collateral hearsay—there's a ton of it there—is to direct the question to did he have an interview on such and such a date with the Defendant and what was the questions; what was the answers, to the best of his ability.

If we get into what somebody else said, we may have to
try this case a third time. Anything else? Bring them in.

The investigating officer then testified, in the presence of the jury, that he had asked the defendant "if he had made a threat on [the complainant's] life to shoot her through the use of a gun." Asked how the defendant responded, the officer said:

In reference to the statement of wanting to shoot her, he said he probably might—he probably would have said something like that.

A defendant's threat against a witness is generally admissible. It is conduct that can demonstrate consciousness of guilt. *People v Falkner*, 36 Mich App 101, 108; 193 NW2d 178 (1971);[7] *People v Hill*, 44 Mich App 308, 318; 205 NW2d 267 (1971); 2 Jones, Evidence (6th ed), §§ 13:46-13:47, pp 515-521.

As the circuit court observed, a threatening remark (while never proper) might in some instances simply reflect the understandable exasperation of a person accused of a crime that the person did not commit. However, it is for the jury to determine the significance of a threat in conjunction with its consideration of the other testimony produced in the case.

IV

The third basis for the Court of Appeals decision to reverse the defendant's conviction was that the prosecution introduced evidence that the defendant had used marijuana on the evening when he and the complainant had sexual relations. The Court of Appeals said that the jury should have been cautioned that

---

[7] Rev'd on other grounds 389 Mich 682; 209 NW2d 193 (1973).

this evidence was admissible only for the limited pur-
pose of assessing the defendant's memory:

> Under *People v Smith*, 106 Mich App 203, 214; 307 NW2d
> 441 (1981), the jury must be cautioned that such evidence
> may be considered only for the specific purpose of assess-
> ing a witness' ability to observe or remember relevant
> events. This evidence was admitted before the defendant
> testified, and it was not cured by the fact that the defendant
> later did testify, because no cautionary instruction was
> given. Neither were there any proofs introduced as to the
> amount or strength of the marijuana or its effect on mem-
> ory or ability to recall. Defendant had made a motion in
> limine to exclude the testimony that defendant used mari-
> juana on the night of the incident and the court ruled that it
> would be allowed for impeachment as to the defendant's
> memory of the event. It was not limited to that use. Cf. *Peo-*
> *ple v Phillips*, 131 Mich App 486; 346 NW2d 344 (1984).

As this Court has frequently explained, there are
substantial limits on the admissibility of evidence
concerning other bad acts. MRE 404(b); *People v*
*VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993).

Nevertheless, it is essential that prosecutors and
defendants be able to give the jury an intelligible
presentation of the full context in which disputed
events took place. The presence or absence of mari-
juana could have affected more than the defendant's
memory. It could have affected the behavior of any-
one who used the drug. Further, inferences made by a
person about the intended conduct of another might
have been affected by the person's knowledge that
the other's conduct was taking place in a setting
where illegal drugs were being used.

In this case, a jury was called upon to decide what happened during a private event between two persons. The more the jurors knew about the full transaction, the better equipped they were to perform their sworn duty. In this regard, we offer again the analysis found in *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978):

> It is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the "complete story" ordinarily supports the admission of such evidence. *State v Villavicencio*, 95 Ariz 199; 388 P2d 245 (1964); *People v Wardwell*, 167 Cal App 2d 560; 334 P2d 641 (1959); McCormick on Evidence (2d ed), § 190.

Stated differently:

> "Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *State v Villavicencio, supra* at 201.

> See also *State v Page*, 395 SW2d 146 (Mo, 1965); *United States v McCartney*, 264 F2d 629 (CA 7, 1959); *Guajardo v State*, 168 Tex Crim 503; 329 SW2d 878 (1959); *State v Kuhnley*, 74 Ariz 10; 242 P2d 843 (1952); 1 Wigmore, Evidence (3d ed), § 218; 1 Wharton's Criminal Evidence (12th ed), § 284.

V

For these reasons, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

BRICKLEY, C.J., and BOYLE, RILEY, MALLETT, and WEAVER, JJ., concurred.

LEVIN, J. (*dissenting*). It has been the invariable practice of this Court to issue an order to show cause to a prosecutor, who has not responded to a defendant's application for leave to appeal, before deciding whether to peremptorily reverse a Court of Appeals decision that affirmed a defendant's conviction.

This Court should, therefore, issue an order to show cause to the defendant[1] before further considering the draft per curiam opinion. Sholl has been released from custody on an order issued by the trial court. He is a layman, and, therefore, probably inadequately apprised that this Court might, in lieu of granting the prosecutor's application for leave to appeal, issue a peremptory order or decision reversing the Court of Appeals without providing him an

---

[1] A possible form of such an order might read as follows:

On order of the Court, the application for leave to appeal is considered and, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we order the defendant to show cause in writing to this Court within 28 days why his conviction should not be reinstated on the grounds that (a) the prosecution properly introduced evidence of voluntary statements made by the defendant following a proper set of warnings with regard to his constitutional rights, (b) evidence of a threat against a witness is admissible as evidence of consciousness of guilt, and (c) testimony concerning drug use is part of the complete story, and would assist the jury in evaluating the testimony given by the complainant and the defendant regarding the disputed events that gave rise to this prosecution. The prosecutor may respond to the defendant's submission within 21 days.

opportunity to seek counsel if he is indigent, to respond to the prosecutor's application, or to retain counsel if he can afford to do so.[2]

Further, this Court should either grant or deny the application for leave to appeal. I dissent from the peremptory reversal of the Court of Appeals for reasons set forth in earlier statements.[3]

---

[2] The prosecutor's proof of service shows that he served only the retained lawyer, who did not respond to the prosecutor's application.

[3] *People v Wright*, 439 Mich 914, 914-915 (1992) (Levin, J., dissenting); *Roek v Chippewa Valley Bd of Ed*, 430 Mich 314, 322; 422 NW2d 680 (1988) (Levin, J., separate opinion); *Grames v Amerisure Ins Co*, 434 Mich 867, 868-875 (1990) (Levin, J., dissenting); *People v Little*, 434 Mich 752, 769-770; 456 NW2d 237 (1990) (Levin, J., dissenting); *People v Wrenn*, 434 Mich 885, 885-886 (1990) (Levin, J., dissenting); *Harkins v Northwest Activity Center, Inc*, 434 Mich 896, 899 (1990) (Levin, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co*, 435 Mich 508, 515; 460 NW2d 194 (1990) (Levin, J., separate opinion); *Yahr v Garcia*, 436 Mich 872, 872-873 (1990) (Levin, J., dissenting); *Universal Underwriters Ins Co v Vallejo*, 436 Mich 873, 873-874 (1990) (Levin, J., dissenting); *People v Stephens*, 437 Mich 903, 903-910 (1991) (Levin, J., dissenting); *People v Berkey*, 437 Mich 40, 54; 467 NW2d 6 (1991) (Levin, J., dissenting); *Turner v Washtenaw Co Rd Comm*, 437 Mich 35, 38-39; 467 NW2d 4 (1991) (Levin, J., separate opinion); *Lepior v Venice Twp*, 437 Mich 955, 956-966 (1991) (Levin, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority*, 440 Mich 852, 852-856 (1992) (Levin, J., dissenting); *In re Reinstatement of Eston (Grievance Administrator v Eston)*, 440 Mich 1205, 1205-1207 (1992) (Levin, J., dissenting); *In re Reinstatement of Callanan*, 440 Mich 1207, 1207-1209 (1992) (Levin, J., dissenting); *McFadden v Monroe Civil Service Comm*, 440 Mich 890, 890-891 (1992) (Levin, J., dissenting); *Holly Twp v Dep't of Natural Resources (Holly Twp v Holly Disposal, Inc)*, 440 Mich 891, 891-893 (1992) (Levin, J., dissenting); *Marzonie v ACIA*, 441 Mich 522, 535-539; 495 NW2d 788 (1992) (Levin, J., dissenting); *People v Waleed*, 441 Mich 902, 902-903 (1992) (Levin, J., dissenting); *People v Hardison*, 441 Mich 913, 914-916 (1993) (Levin, J., dissenting); *People v Justice*, 441 Mich 916, 917-919 (1993) (Levin, J., dissenting); *People v LaClear*, 442 Mich 867, 867-871 (1993) (Levin, J., dissenting); *Auto-Owners Ins Co v City of Clare,* 446 Mich 1, 16-18; 521 NW2d 480 (1994) (Levin, J., dissenting); *Weisgerber v Ann Arbor Center for the Family*, 447 Mich 963, 964-969 (1994) (Levin, J., dissenting); *Howard v White*, 447 Mich 395, 405-410; 523 NW2d 220 (1994) (Levin, J., dissenting).

CAVANAGH, J., concurred with LEVIN, J.

---

See *Schweiker v Hansen*, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt*, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa*, 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").