# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

THOMAS CURETON, JR.,

      Defendant-Appellant.

UNPUBLISHED
February 27, 2018

No. 334811
Wayne Circuit Court
LC No. 15-010441-01-FH

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for assault with a dangerous weapon, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to four days, time served, for the assault with a dangerous weapon conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTS

On October 27, 2015, at approximately 4:30 p.m., Gary Nixon was sitting on the porch of the home of a friend. According to Nixon's testimony at trial, defendant, a long-time friend of Nixon's, pulled up to the house in a silver Dodge Durango, got out of the truck, walked up to the porch, and attacked Nixon. Nixon testified that defendant was angry because Nixon owed him twenty dollars. The two men wrestled for about two minutes, then defendant left in the Durango. After defendant left, Nixon straightened up the porch, then walked across the street to where a neighbor, Quentin Petite, was getting in his truck.

As Nixon talked to Petite, who now was in his truck, defendant again pulled up in the silver Durango. Defendant had been gone approximately two to five minutes. According to Nixon, defendant got out of the Durango, opened the rear driver's side door, and pulled out a shotgun. Defendant waved the shotgun in the direction of Nixon and Petite. Nixon ran, and defendant pursued him. When defendant was about ten feet away, Nixon fell to the ground and then heard the shotgun go off. Nixon was not shot. According to Nixon, defendant paused for a moment and appeared to observe the situation. Defendant then picked up the shotgun shell, and left in the Durango. After defendant left, Nixon realized that his head was bleeding from the fistfight that had happened earlier. Nixon later went to the hospital and was treated with staples in the left side of his head.

-1-

Quentin Petite's testimony at trial corroborated Nixon's. Petite testified that on that day he was in his home when he heard a commotion outside. Looking out the window, he saw a silver Durango pulling away and also saw Nixon across the street picking up a trash can. Petite went out and got into his own truck. Nixon approached the driver's side window, and Petite noticed blood trickling down behind Nixon's ear. As Petite and Nixon talked, Petite saw defendant return in the silver Durango. Defendant parked across the street, got out, took a shotgun from the back seat of the Durango, and walked toward them holding the shotgun at waist level. Petite testified that defendant appeared "spaced out" and like "he was on something." Nixon ran, defendant chased Nixon across Petite's lawn, and Petite heard a shot. Petite testified that he heard defendant say, "Motherf***er's going to pay me my money," but then defendant picked up the shotgun shell and told Nixon that "[w]e family. We – you know, we still cool[.]" Defendant then left in the Durango. According to Petite, defendant returned to Petite's house about 20 minutes later. When Petite asked defendant about the incident, defendant told Petite that he had had "to go old school" on Nixon. Defendant also told Petite that he had cut Nixon with a box cutter.

Defendant testified that the events occurred differently. He testified that on that day he walked over to the house where Nixon was sitting because he wanted to talk to his friend who lived there. Defendant mentioned to Nixon that he was going to the store, and Nixon asked defendant to buy beer for him. When defendant refused, Nixon slapped defendant in the face, leaving a cut under his eye. Defendant and Nixon then fought, after which defendant walked home. Upon returning home, defendant told his then-fiancée, now wife, Terra (Stribling) Cureton, about the fight, and Terra bandaged his eye. Defendant denied that he had returned and encountered Nixon a second time, and denied threatening Nixon with a gun. He also denied driving the Durango that day; defendant testified that although his father owns a silver Durango, he did not have access to the truck that day, and instead only had access to the truck on Mondays, Wednesdays, and Fridays.

As a result of the events on October 27, 2015, defendant was charged with one count of assault with intent to do great bodily harm less than murder, two counts of assault with a dangerous weapon, and one count of felony-firearm. At the conclusion of the preliminary examination, defendant was bound over on one charge of assault with a dangerous weapon and the felony-firearm charge. At the conclusion of trial, the jury found defendant guilty of both charges. Defendant thereafter moved for a new trial asserting numerous allegations that his trial counsel had been ineffective. The trial court denied the motion. Defendant later filed a second motion for a new trial, again alleging that he had received ineffective assistance of trial counsel, which the trial court again denied.

## II. DISCUSSION

### A. INEFFECTIVE ASSISTANCE: FAILURE TO CALL ALIBI WITNESS

Defendant first argues that he was denied the effective assistance of counsel at trial because trial counsel failed to investigate, interview, and present a known alibi witness, Terra Cureton, defendant's then-fiancée, now wife. Defendant contends that Terra would have corroborated his testimony and refuted the testimony of the prosecution's witnesses. We disagree that failure to call Terra constituted ineffective assistance of counsel.

Whether defense counsel performed ineffectively presents a mixed question of fact and law; we review the trial court's findings of fact for clear error and review de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016) (citations omitted). We evaluate the performance of counsel as of the time of the alleged error without the benefit of hindsight. *Id*. "A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy." *Id*. (citation omitted). Further, "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). "Defendant is required to show that trial counsel's performance prejudiced him enough to deprive him of a fair trial." *Solloway*, 316 Mich App at 191 (citation omitted).

Defense counsel at trial is obligated to prepare, investigate, and present all substantial defenses. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. "Trial counsel's determinations about whether to call or to question a witness are presumed to be matters of trial strategy, and only constitute ineffective assistance of counsel when that decision deprives the defendant of a substantial defense. *Solloway*, 316 Mich App at 190.

In this case, a review of the record demonstrates that trial counsel's alleged failure to call Terra as an alibi witness did not deprive defendant of a substantial defense. In her affidavit, Terra states that had she been called as a witness, she would have testified that she arrived at home at approximately 4:00 p.m. on October 27, 2015, that her father-in-law's Durango was parked behind the house, and that it remained there until at least October 28, 2015. She also would have testified that defendant came home at approximately 5:30 p.m. on October 27, 2015, had a bruise on his face, told her that he had been in a fight with Nixon, and did not leave the house again that evening.

Assuming that Terra would have testified consistently with her affidavit, Terra's testimony does not provide an alibi for defendant. At trial, the prosecution presented evidence that at approximately 4:30 p.m. on October 27, 2015, defendant drove a silver Durango to the house where Nixon was sitting on the porch, got into a fistfight with Nixon for two minutes or less, left in the Durango, returned two to five minutes later in the Durango with a shotgun, chased Nixon with the shotgun, shot the shotgun in the vicinity of Nixon, and once again left in the Durango. Defendant returned about 20 minutes later and talked to Petite, explaining that Nixon owed him money. Thus, testimony at trial established that the altercation and shooting happened around 4:30 p.m. and concluded by 5:30 p.m., given the timeline testified to by the prosecution's witnesses. Terra's affidavit does not account for defendant's whereabouts until after 5:30 p.m. when, according to Terra, defendant returned home. Thus, even if Terra's testimony had been presented to the jury, her testimony would not have provided an alibi for defendant during the time the incident occurred.

Defendant argues, however, that Terra would have contradicted the testimony of Nixon and Petite that defendant arrived at the scene in a silver Durango. Terra's affidavit states that the

silver Durango owned by her father-in-law was parked behind the house that day when she arrived home at 4:00 p.m. and that the truck remained there for the rest of the evening. This testimony, however, does not provide an alibi for defendant. Although Nixon and Petite both testified that defendant was driving a silver Dodge Durango, the prosecution did not present evidence regarding who owned the Durango. In other words, although there was testimony that defendant was driving a silver Durango, there was no evidence that defendant was driving his father's truck. When defendant testified, he explained that his father owned a silver Dodge Durango but that he had not had access to the truck that day. Terra's testimony does not refute the testimony of the prosecution's witnesses that they saw defendant driving a silver Durango. Further, Terra's testimony would have suggested that contrary to defendant's testimony, defendant did have access to the Durango that day, as she claimed it was parked in the driveway of their home. Because Terra's testimony is unlikely to have provided a substantial defense, defendant has not overcome the strong presumption that his trial counsel's failure to call Terra as an alibi witness constituted sound trial strategy. *Solloway*, 316 Mich App at 188.

## B. INEFFECTIVE ASSISTANCE: FAILURE TO OBJECT

Next, defendant contends that evidence of the fistfight between Nixon and defendant, and in particular that Nixon was injured in the fistfight, was inadmissible because it was both irrelevant and prejudicial. Defendant contends that defense trial counsel's failure to object to the evidence, or to seek a limiting instruction, constitutes ineffective assistance of counsel. We disagree.

Generally, all relevant evidence is admissible, while all irrelevant evidence is inadmissible. MRE 402; *People v Coy*, 258 Mich App 1, 13; 669 NW2d 831 (2003). Relevant evidence is evidence that tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence. MRE 401. Relevant evidence may be excluded, however, if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. MRE 403. To some extent, all relevant evidence is inherently prejudicial; only unfairly prejudicial evidence warrants exclusion. *People v Pickens*, 446 Mich 298, 336-337; 521 NW2d 797 (1994).

The facts and circumstances surrounding the commission of a crime generally are properly admissible as part of the res gestae. *People v Shannon*, 88 Mich App 138, 146; 276 NW2d 546 (1979). Evidence of these surrounding facts and circumstances are admissible if they are "so blended or connected with the crime of which [the] defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime." *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996) (citation omitted). This is true even when the facts and circumstances involve other criminal acts. *People v Delgado*, 404 Mich 76, 83; 273 NW2d 395 (1978). Our Supreme Court has stated that "it is essential that prosecutors and defendants be able to give the jury an intelligible presentation of the full context in which disputed events took place. *Sholl*, 453 Mich at 741. Our Supreme Court in *Delagdo* further stated that "[i]t is the nature of things that an event often does not occur singly and independently, isolated from all others, but, instead, is connected with some antecedent event from which the fact or event in question follows as an effect from a cause. When such is the case and the antecedent event incidentally involves the commission of another crime, the principle that the jury is entitled to hear the 'complete story' ordinarily supports the admission of such evidence." *Id*. at 83.

-4-

In this case, the evidence of the fistfight would likely have been determined to be relevant regardless of any objection. The fistfight occurred within five minutes of the assault with the gun, occurred at the same location, and involved the same people. Both events were witnessed by the same neighbor. Evidence of the fistfight therefore is "so blended or connected" with defendant's assault on Nixon with the gun, that "proof of one incidentally involves the other or explains the circumstances of the crime." Because the evidence was admissible, defense trial counsel was not ineffective for failing to object to the admission of the evidence.[1]

In any event, the evidence was also relevant to defendant's defense that he did not return to the area after the fistfight because he was home with Terra, who was attending to the cut under his eye that he received in the fistfight. There was therefore a legitimate strategic reason for trial counsel to neither object to nor seek a limiting instruction for the evidence related to the initial altercation between defendant and Nixon. Whether to pursue a particular defense theory is a matter of trial strategy. See *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Trial "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Trial counsel is not ineffective simply because the strategy chosen does not work. *People v Williams*, 240 Mich App 316, 332; 614 NW2d 647 (2000).

## C. DENIAL OF MOTION FOR NEW TRIAL

Finally, defendant on appeal states that he "reasserts all issues raised" in his June 3, 2016 motion for a new trial before the trial court. Defendant, however, has failed to present argument or authority in support of this issue, except to reference his motion filed before the trial court. These issues therefore are abandoned on appeal. It is not sufficient for an appellant in his or her brief to merely announce a position or identify an alleged error, leaving this Court to search for a basis to sustain or reject the position on appeal. See *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001). Moreover, our review of the record demonstrates that plaintiff's contentions, being additional assertions of ineffective assistance of counsel at trial, are not supported by the record.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[1] Moreover, evidence that Nixon was injured during the fistfight confirms that he did not receive that injury as a result of defendant firing the gun; in other words, the alternative explanation for Nixon's injury confirms that defendant did not shoot Nixon.