*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2024

Plaintiff-Appellant,

v

No. 367741
Ottawa Circuit Court

JOMAR AYALA-LOPEZ,

LC No. 23-045834-FH

Defendant-Appellee.

Before: CAMERON, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

In this interlocutory appeal, the prosecution appeals by leave granted[1] the trial court's order denying the prosecution's motion to allow other-acts evidence in this case arising out of an alleged first-degree home invasion and felonious assault. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

Following a preliminary examination, defendant, Jomar Ayala-Lopez, was bound over on charges of first-degree home invasion, MCL 750.110a, felonious assault, MCL 750.82, interference with electronic communications causing injury, MCL 750.540(2)(b), and malicious destruction of personal property, MCL 750.377a. According to the complainant, on January 25, 2023, Ayala-Lopez entered the complainant's apartment without permission while she was sleeping. She woke up when he entered her bedroom. The complainant and Ayala-Lopez were, at one point, in a dating relationship. However, the complainant testified that she had told him earlier that day not to come to her apartment. When she woke to find him in her bedroom, she told him to leave and warned that if he did not do so that she would call the police. She testified that Ayala-Lopez became upset, grabbed her wrists, and threw her onto the bed. She stated that she yelled at him that she "wanted him out" and wanted "nothing to do with him." She again warned

_____

[1] *People v Ayala-Lopez*, unpublished order of the Court of Appeals, entered March 8, 2024 (Docket No. 367741).

that she would call the police. According to the complainant, Ayala-Lopez put his hand in his pocket and pulled out a full bottle of beer, which he used to strike her a few times, including in her head. When she reached for her cellular telephone, he grabbed it. She demanded that he return it to her, but he instead tried to break it against the corner of her bed. Ayala-Lopez then ran out of her apartment with her telephone.

The complainant stated that she ran after him and demanded that he return her telephone. Ayala-Lopez allegedly threw the telephone at her, and it broke when it fell to the ground. The complainant stated that she turned and started running back to her apartment, but that Ayala-Lopez grabbed her hair and dragged her toward the garage. She claimed that he hit her in the ribs and "busted up" her lip. She "started yelling as hard as" she could. Ayala-Lopez allegedly threw her to the ground. She continued yelling for help, and he started running away. When she tried to run back to the apartment, he again pursued her. According to the complainant, when Ayala-Lopez saw her son standing in the doorway, he looked at her, hugged her, kissed her forehead, and told her that he loved her. He then left. The complaint used her son's telephone to call the police.

Following the preliminary examination, the prosecution filed a notice of intent "to introduce evidence." The prosecution identified the evidence to be admitted as (1) a recorded telephone conversation between Ayala-Lopez, the complainant, and a third party during which Ayala-Lopez threatened the complainant; (2) a call log indicating that Ayala-Lopez placed 63 unanswered telephone calls to the complainant while a no-contact order was in place; (3) a call log indicating that, after the complainant's phone number was blocked, Ayala-Lopez placed seven calls to the complainant's mother; and (4) a letter that Ayala-Lopez wrote to the complainant. The prosecution asserted that each piece of evidence was relevant and was admissible under MRE 801(d)(2), MRE 404(b), and MCL 768.27b. The defense objected. Following a hearing on the motion, the trial court issued a written opinion and order denying the prosecution's motion to admit the evidence.

## II. ADMISSION OF EVIDENCE

### A. STANDARD OF REVIEW

The prosecution argues that the trial court abused its discretion by denying its motion to admit evidence. Challenges to a trial court's decision to exclude evidence are reviewed for an abuse of discretion. *People v Spaulding*, 332 Mich App 638, 649; 957 NW2d 843 (2020). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

## B. ANALYSIS

On appeal, the prosecution argues that the trial court abused its discretion by denying its motion to admit the proffered evidence because it was relevant under MRE 401.[2] Generally, relevant evidence is admissible. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Stated differently, to be relevant, evidence must be material, i.e., related to any fact that is of consequence to the case, and it must be probative, i.e., it must have a tendency to make the existence of a fact of consequence more or less probable than it would be without the evidence. *People v Sabin (After Remand)*, 463 Mich 43, 57; 614 NW2d 888 (2000). In order to be material, the fact must only be " 'in issue' in the sense that it is within the range of litigated matters in controversy." *Id*. (quotation marks and citation omitted).

We first consider whether the trial court abused its discretion by determining that a transcript of a telephone call among Ayala-Lopez, the complainant, and a third party is irrelevant. In evaluating the conversation, the trial court found that Ayala-Lopez *likely* threatened harm to the complainant during the phone call. We disagree. The comments were made on the same day that the complainant testified against Ayala-Lopez at the preliminary examination. In the call, Ayala-Lopez asked whether the complainant had testified willingly and when she stated that she had, he responded that that was the "worst" thing that she could have done. She asked if he was threatening her. He stated, "No, but I expect you to move, and your mom to move, and your sister to move." The complainant stated that she thought he was threatening her. Ayala-Lopez responded, "You be careful. Finish the call, please—hello?" The complainant did not respond because she had hung up. Taken as a whole, Ayala-Lopez's comments show that he intended to threaten the complainant and that she understood his comments to be a threat.

"A defendant's threat against a witness is generally admissible" because it "can demonstrate consciousness of guilt." *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996). Additionally, "[e]vidence that a defendant made efforts to influence an adverse witness is relevant if it shows consciousness of guilt." *People v Schaw*, 288 Mich App 231, 237; 791 NW2d 743 (2010). We conclude that Ayala-Lopez's threat to the complainant during the conversation tends to demonstrate his consciousness of guilt because it appears to have been made in an effort to intimidate her into not testifying against him. Although a threatening remark may, in some instances, "simply reflect the understandable exasperation of a person accused of a crime that the person did not commit," it is the jury's duty to "determine the significance of a threat in conjunction with its consideration of the other testimony produced in the case." *Sholl*, 453 Mich at 740. Therefore, it was for the jury to decide the significance of his threat. Accordingly, the trial court abused its discretion when it determined that the portion of the telephone conversation where he communicated the threat to the complainant was irrelevant.

---

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). This opinion relies on the version of the rules in effect at the time this matter was decided.

-3-

The court, however, did not abuse its discretion by concluding that Ayala-Lopez's comment to a third party that the complainant would be "fucked" when he was released from jail was irrelevant. The comment confirms Ayala-Lopez's intent to harm the complainant when he was released from jail; however, because it was not communicated to the complainant, it was not relevant to the matters at issue in this case.

Next, the trial court concluded that a letter that Ayala-Lopez wrote to the complainant was irrelevant. According to the prosecution, the letter was sent the week before the preliminary examination. In the letter, Ayala-Lopez apologized for what had occurred, declared his unwavering love for the complainant, and reminisced on "beautiful" memories that they had shared. Thereafter, he asked her to state that her son had let him into the home (which would undermine that factual basis of the first-degree home invasion charge). Then he asked her to drop the charges so that he could plead guilty, which could indicate that he expected a better plea deal if the complainant stopped cooperating with the prosecution on the most serious charge. Overall, the structure and content of the letter suggest that Ayala-Lopez employed manipulation tactics throughout it to influence the complainant. Therefore, the letter tends to demonstrate a consciousness of guilt, which renders the letter relevant. See *Sholl*, 453 Mich at 740; *Schaw*, 288 Mich App at 237. Indeed, his consciousness of guilt is clearly reflected by the fact that he apologized to her for what had occurred. Accordingly, the trial court abused its discretion when it determined that the entire letter was irrelevant.

Finally, the prosecution seeks to introduce a call log showing that, over the span of eight days, Ayala-Lopez made 63 unanswered calls to the complainant. And after he was blocked from calling her, he made seven calls to her mother. The calls violated a no-contact order. In ruling on the admissibility of this evidence, the trial court held:

> While this evidence does show [Ayala-Lopez's] repeated violation of the jail's no-contact order, this is not at issue in this case. Thus, it does not have [a] tendency to make any facts material to *this* case more likely or less likely to have occurred. As [Ayala-Lopez] accurately asserts, this evidence is more appropriate for the subsequent case filed against [Ayala-Lopez] for Witness Intimidation.

We agree. Notwithstanding that it is generally reasonable to conclude that incessant calling is a form of harassment, the record does not reflect that the complainant was aware that Ayala-Lopez was repeatedly calling her. Moreover, we can only speculate as to his intent in placing the calls. It is equally plausible that the purpose of the calls was innocuous as it is that they were meant to be nefarious. As a result, unlike the letter and the phone call through a third party, both of which were relevant to show consciousness of guilt, the call log is not relevant for any purpose. Accordingly, the trial court did not abuse its discretion by holding that the call log was irrelevant and, therefore, inadmissible.

Determining that the letter and part of the phone call is relevant does not end our inquiry. The prosecution contends that the evidence is admissible under MCL 768.27b(1), which provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MRE 403 provides that relevant evidence "may

be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Alternatively, the prosecution suggests that it is admissible under MRE 404(b), which also requires the trial court to conduct an analysis under MRE 403's balancing test. See *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).[3]

With regard to the letter, the trial court determined Ayala-Lopez's statement, "If you can drop the charges so that I can plead guilty," would substantially confuse the jury. Again, relevant evidence may be excluded under MRE 403's balancing test if its probative value is substantially outweighed by the danger of "confusion of the issues, or misleading the jury . . . ." Given the inherently contradictory nature of the comment, which on one hand asks the complainant to have the charges dropped and on the other hand suggests that Ayala-Lopez wanted to plead guilty, the jury is reasonably likely to be confused or mislead about the intended purpose of the statement. As a result, we conclude that the trial court did not abuse its discretion by excluding that sentence under MRE 403. See *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) ("The trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion.").

However, the trial court did not apply MRE 403's balancing test to the balance of the letter, nor did it apply it to the portion of the phone conversation where Ayala-Lopez threatened the complainant. MRE 403 "determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony" by the trial court. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) (quotation marks and citation omitted). As a result, we conclude that the trial court is in the best position to make a determination under MRE 403 as to each piece of evidence. We, therefore, decline to rule in the first instance whether the evidence satisfies or does not satisfy MRE 403's balancing test. And, because the evidence may not be admitted under MCL 768.27b or MRE 404(b) unless it first satisfies MRE 403's balancing test, we conclude that, although the evidence is relevant, it is not yet clear whether it is admissible. We therefore remand to the trial court for further proceedings. See *VanderVliet*, 444 Mich at 81.

Lastly, in the interest of completeness, we briefly address the prosecution's contention that all of the evidence is relevant to prove motive, intent, knowledge, identity, and the absence of mistake or accident. Below and on appeal, the prosecution proffered the above cursory list of reasons for why the evidence is relevant and admissible. Yet, "[m]echanical recitation of "knowledge, intent, absence of mistake, etc.," without explaining how the evidence relates to the recited purposes, in insufficient to justify admission under MRE 404(b)(1)." *People v Crawford*, 458 Mich 376, 386; 582NW2d 785 (1998). We conclude that none of the offered evidence makes it more probable than not that Ayala-Lopez had a motive to commit the crimes that he was charged with. Nor is it probative as to his intent at the time that he is alleged to have committed those crimes. Further, Ayala-Lopez has not asserted that his actions were the result of mistake or

---

[3] The prosecution also argued that it was admissible as non-hearsay under MRE 801(d)(2). We agree that any relevant comments by Ayala-Lopez are non-hearsay under MRE 801(d)(2), but that fact is not dispositive as to their overall admissibility.

accident, and his identity is not in dispute.  Thus, we conclude that the prosecutions alternative rationale for why the evidence is relevant are baseless.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Christopher P. Yates